**William ANDREWS, Plaintiff–Appellant,**

**v.**

**Gary DELAND, Director of Utah Department of Corrections, and M. Eldon Barnes, Warden, Utah State Prison, Defendants–Appellees.**

**William ANDREWS, Petitioner–Appellant,**

**v.**

**M. Eldon BARNES, Warden, Utah State Prison, Respondent–Appellee.**

**Nos. 89–4104, 89–4109 and 90–4145.**

United States Court of Appeals, Tenth Circuit.

Aug. 23, 1991.

Rehearing Denied Oct. 31, 1991.

Gordon G. Greiner, Holland & Hart, Denver, Colo., and Timothy K. Ford, MacDonald Hoague & Bayless, Seattle, Wash. (Sandra R. Goldman, Holland & Hart, Denver, Colo., and Robert M. Anderson, Anderson & Watkins, Salt Lake City, Utah, with them on the briefs), for appellant.

Robert R. Wallace, Hanson, Epperson & Smith, Salt Lake City, Utah (T.J. Tsakalos, and Daniel S. McConkie, Hanson, Epperson & Smith, Salt Lake City, Utah, with him on the briefs), for appellees.

Before McKAY, STEPHEN H. ANDERSON and BALDOCK, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

William Andrews appeals from the denial of his second federal petition for a writ of habeas corpus, and the dismissal of his accompanying civil rights action. Those matters were filed in the district court in July, 1989. Andrews thereafter amended and supplemented his habeas petition to include issues arising from proceedings before the Utah Board of Pardons. In August, 1989, the district court issued its decision on the matters raised by Andrews in his initial filing. However, the issues raised by Andrews' amendment required significant additional development, including the presentation of evidence. Upon the conclusion of those proceedings the district court entered a final, appealable order in August, 1990, denying all relief. Andrews filed his notice of appeal, thus conferring jurisdiction over his habeas petition on this court, on September 17, 1990. With due consideration of appropriate briefing schedules, the matter was scheduled for oral argument to our court in January, 1991. Having considered all the written and oral argument of the parties, we now grant a certificate of probable cause, and affirm the dismissal of Andrews' habeas petition as well as his civil rights action. A more detailed procedural history of this lengthy case follows.

Andrews was convicted in Utah state court on three counts of first degree murder and two counts of aggravated robbery. The three murder counts arose out of Andrews' participation in the torture and murders of Carol Naisbitt, Michelle Ansley, and Stanley Walker in the Hi–Fi Shop in Ogden, Utah, on the evening of April 22, 1974. The aggravated robbery counts stemmed from the robberies of Stanley Walker and his father, Orren Walker, Jr. Andrews was tried jointly with Pierre Dale Selby, formerly known as Dale S. Pierre, and Keith Roberts. Roberts was convicted of aggravated robbery and sentenced to a prison term. Selby was convicted on all counts and sentenced to death. After extensive appeals in state and federal courts, his death sentence was carried out on August 28, 1987. Andrews was likewise sen-

tenced to death on the murder counts. His conviction and sentence were affirmed on direct appeal by the Utah Supreme Court. *State v. Andrews,* 574 P.2d 709 (Utah 1977) (*Andrews I*), *reh'g denied,* 576 P.2d 857 (Utah 1978).[1] The United States Supreme Court denied certiorari. *Andrews v. Utah,* 439 U.S. 882, 99 S.Ct. 220, 58 L.Ed.2d 194 (1978).

In November, 1978, Andrews filed a petition, subsequently amended, for postconviction relief in the district court of Salt Lake County, Utah. That petition was dismissed and the Utah Supreme Court affirmed the dismissal after reviewing the merits. *Andrews v. Morris,* 607 P.2d 816 (Utah 1980) (*Andrews II*).[2] The United States Supreme Court again denied certiorari. *Andrews v. Morris,* 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120 (1980).

Andrews then filed his first federal habeas petition in the United States District Court for the District of Utah.[3] While that petition was pending, the Utah Supreme Court issued a decision, *State v. Wood,* 648 P.2d 71 (Utah 1982), *cert. denied,* 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982), which was possibly relevant to Andrews' case. The federal district court stayed the proceedings in Andrews' habeas petition to permit him to again seek collateral relief in the Utah Supreme Court on the question of the retroactive application of the *Wood* decision to his case. The Utah Supreme Court held that the decision was not retroactive and denied the petition for postconviction relief. *Andrews v. Morris,* 677 P.2d 81 (Utah 1983) (*Andrews III*). Proceedings in Andrews' federal habeas petition were resumed, and ultimately the petition for habeas relief was denied. *Andrews v. Shulsen,* 600 F.Supp. 408 (D.Utah 1984) (*Andrews IV*).[4] This court affirmed the

denial. *Andrews v. Shulsen,* 802 F.2d 1256 (10th Cir.1986) (*Andrews V*). Again, the United States Supreme Court denied certiorari. *Andrews v. Shulsen,* 485 U.S. 919, 108 S.Ct. 1091, 99 L.Ed.2d 253 (1988).

Meanwhile, in October, 1987, Andrews filed another petition for postconviction relief in the district court of Salt Lake County, Utah, raising for the first time some of the issues presented in the present habeas petition. That state petition was denied, and the denial was affirmed on appeal by the Utah Supreme Court. *Andrews v. Shulsen,* 773 P.2d 832 (Utah 1988) (*Andrews VI*). A new execution date was set for August 22, 1989.

The present petition for a writ of habeas corpus was filed on July 19, 1989. Andrews simultaneously filed a civil rights action under 42 U.S.C. § 1983. Both matters were referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B). In an 89–page Report and Recommendation, the magistrate judge recommended dismissal of the habeas petition.[5] The district court adopted the Report and Recommendation and dismissed the petition. *Andrews v. Barnes,* 1989 WL 230923 1989 U.S.Dist. LEXIS 17246 (D.Utah 1989). By order dated August 19, 1989, this court issued a stay of execution.

While the present habeas petition was pending before the district court, the Utah Board of Pardons conducted a hearing on Andrews' Application for Commutation of Death Sentence. The hearing took place on August 10 and 11, 1989, and resulted in the denial of Andrews' application to commute his death sentence to life imprisonment. At that hearing, however, certain information came to light which formed the basis of a new application for postconviction relief before the Utah Supreme Court,

---

1. *See also State v. Pierre,* 572 P.2d 1338 (Utah 1977), *reh'g denied,* 576 P.2d 857 (Utah), *cert. denied,* 439 U.S. 882, 99 S.Ct. 219, 58 L.Ed.2d 194 (1978).

2. *See also Pierre v. Morris,* 607 P.2d 812 (Utah 1980).

3. The petition was actually filed in 1978, but was stayed pending exhaustion of state remedies.

4. *See also Selby v. Shulsen,* 600 F.Supp. 432 (D.Utah 1984).

5. He had previously recommended dismissal of the civil rights claims as frivolous. The district court thereafter dismissed the complaint as frivolous under 28 U.S.C. § 1915(d).

as well as the supplement to the present petition for habeas corpus relief. The Utah Supreme Court addressed the two issues raised on their merits, and, on August 18, 1989, denied the petition for postconviction relief and refused to grant a stay of execution. *Andrews v. Barnes,* 779 P.2d 228 (Utah 1989) (*Andrews VII*). The United States Supreme Court again denied certiorari. *Andrews v. Barnes,* 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 341 (1989).

After the stay of execution was entered by this court on August 19, the supplement to the present petition for habeas relief generated additional discovery and a hearing before the magistrate judge. Ultimately, on May 10, 1990, the magistrate judge issued a 68–page Report and Recommendation recommending dismissal of the issues raised in the supplement to that petition. Andrews made numerous motions in the district court pertaining to the magistrate judge's report. By order dated August 3, 1990, the district court adopted the magistrate judge's Report and Recommendation and dismissed Andrews' supplement to the present petition for a writ of habeas corpus. *Andrews v. Barnes,* 743 F.Supp. 1496 (D.Utah 1990). Andrews filed a Motion for Reconsideration and/or a New Trial as well as a Motion for Certificate of Probable Cause, which were denied. Those denials, as well as the dismissal of his civil rights claim, were timely appealed to this court.

## DISCUSSION

### Issues Presented on Appeal.

Andrews' habeas petition, as supplemented, raises five issues: (1) whether Andrews' court-appointed counsel was ineffective, as demonstrated by his failure to differentiate Andrews' culpability from that of his co-defendant, Pierre Selby, and, particularly, by his failure to request a jury instruction on the lesser included offense of second degree murder; (2) whether Andrews was denied his right to due process and to freedom from arbitrariness in capital sentencing by the failure of the trial court to instruct the jury on the lesser included offense of second degree murder, which, Andrews asserts, was clearly avail-

able under the evidence; (3) whether Andrews was denied the right to a fair and impartial jury because the trial judge failed to take appropriate action to determine the prejudicial effect on the jury, if any, of the jury's exposure during the trial to a note depicting a hanging with the words "Hang the Niggers;" (4) whether Andrews was impermissibly prejudiced by the prosecutor's use of a peremptory challenge to dismiss the only black juror impanelled; and (5) whether Andrews was similarly prejudiced by the presentation by the prosecution, during the penalty phase of Andrews' trial, of allegedly false testimony concerning the incidence of recidivism by convicted murderers at the Utah State Prison. His civil rights claim seeks injunctive relief from the imposition of his death sentence.

The state asserts numerous grounds for dismissing Andrews' habeas petition: abuse of the writ, procedural default, lack of exhaustion, nonretroactivity under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and lack of substance on the merits. The magistrate judge and district court rejected all of Andrews' arguments, finding that some were an abuse of the writ, some were procedurally defaulted, and some were without merit. Additionally, they found one claim barred under *Teague*'s nonretroactivity doctrine. Andrews challenges those rejections and argues also that the district court failed to conduct the kind of de novo review of the magistrate judge's Reports and Recommendations required by 28 U.S.C. § 636(b)(1) and Article III of the Constitution. He likewise challenges the dismissal of his civil rights claim.

### Summary of Our Decision.

We hold as follows: (1) Andrews' claim of entitlement to a second degree murder instruction under *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) is dismissed as an abuse of the writ; alternatively, it is barred by *Teague*'s nonretroactivity doctrine; (2) his claims of ineffective assistance of counsel are dismissed as an abuse of the writ; alternatively, they are procedurally barred and, alternatively, after a careful review of the record, those

claims are rejected on their merits; (3) his claims relating to the napkin incident are dismissed because they are brought in a successive habeas petition; (4) his claims based upon the exclusion of the black juror are rejected on their merits; (5) his claims relating to the presentation of allegedly false testimony during the penalty phase of his trial are dismissed as an abuse of the writ; alternatively, they are rejected on their merits; (6) the district court's review of the magistrate judge's Reports and Recommendations was adequate; and (7) the district court properly dismissed Andrews' civil rights action. We therefore grant the certificate of probable cause because Andrews has raised substantial questions, and affirm the dismissal of Andrews' habeas petition, as supplemented, as well as the denial of his motions for reconsideration and/or a new trial.

Our treatment below of the issues raised in the habeas petition is structured for convenience of analysis rather than in the order that the issues are raised in the petition.

## HABEAS PETITION

### I.

### DE NOVO REVIEW OF MAGISTRATE JUDGE'S REPORTS.

■ We treat this issue first, because it is fundamental to the appeal. 28 U.S.C. § 636(b)(1) requires a district court judge to "make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." The judge may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* The judge is afforded considerable discretion in determining what reliance he or she may place upon the magistrate judge's findings and recommendations. *See United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("in providing for a '*de novo* determination' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion,

chose to place on a magistrate's proposed findings and recommendations."). This court has stated:

> In order to conduct a *de novo* review a court "should make an independent determination of the issues ...; [it] 'is not to give any special weight to the [prior] determination'...." "The district judge is free to follow [a magistrate judge's recommendation] or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew."

*Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir.1988) (citations omitted). We have also noted that "an appellate court must be satisfied that a district judge has exercised his nondelegable authority by considering the actual testimony, and not merely by reviewing the magistrate's report and recommendations." *Gee v. Estes*, 829 F.2d 1005, 1008–09 (10th Cir.1987) (per curiam) (quoting *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir.1981) (per curiam)).

■ Andrews argues that the brevity of the district court's orders adopting the magistrate judge's two reports, the lack of a specific discussion in those orders of many of the issues or the record in this case, and the rapidity with which the district court reviewed and adopted the reports all indicate that the district court failed to conduct the kind of *de novo* review required by section 636(b)(1). We disagree.

In its ruling and order adopting the magistrate judge's report and dismissing the first part of the habeas petition, the district court specifically stated that it did so "[a]fter full review of the R & R, Andrews' objections and the case file." R. Vol. I Tab 38. In its second ruling and order, adopting the magistrate judge's report and dismissing the remainder of the habeas petition, the court stated it did so "[a]fter careful review of the lengthy record, including extensive written memoranda, and thorough analysis of the facts and applicable law outlined by the magistrate in his R & R." R.Vol. II Tab 112. It indicated it had engaged in an "independent *de novo* review of the evidence." R. Vol. II Tab

112 (citing *Gee v. Estes*, 829 F.2d 1005). We will not look behind a district court's express statement that it engaged in a *de novo* review of the record. The record in this case demonstrates that the district court conducted the appropriate review under section 636(b)(1).

## II.

### ABUSE OF THE WRIT: NAPKIN INCIDENT AND RECIDIVISM TESTIMONY.

#### A. *Principles Governing Abuse of the Writ.*

A federal court may dismiss a petition for a writ of habeas corpus as an abuse of the writ under 28 U.S.C. § 2244(b) and 28 U.S.C. foll. § 2254, Rules Governing Section 2254 Proceedings, Rule 9(b) if the writ is a "second or successive petition ... [that] ... fails to allege new or different grounds for relief and the prior determination was on the merits, or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ." Section 2244(b) contains a similar prohibition: "a subsequent application for a writ of habeas corpus ... need not be entertained ... unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ."

As these provisions indicate, and as we noted in *Coleman v. Saffle*, 869 F.2d 1377, 1380 (10th Cir.1989), there is a difference between "claims raised and reached on the merits in an earlier habeas petition, referred to as 'successive petitions,' and claims raised for the first time in a subsequent petition," commonly referred to as abusive petitions. Both have application to Andrews' petition.

The Supreme Court has recently clarified the standard for determining when a petitioner abuses the writ by raising a new claim in a subsequent habeas petition. After exploring the history of the writ and the Court's habeas corpus precedents, the Court in *McCleskey v. Zant*, —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), held that the *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), cause-and-prejudice test applicable to cases of procedural default applies also "to determine if there has been an abuse of the writ through inexcusable neglect." *McCleskey v. Zant*, 111 S.Ct. at 1470.[6] Thus, claims raised for the first time in a second or subsequent habeas petition will be dismissed as abusive unless the petitioner can show cause for the failure to raise the claim in an earlier habeas petition, and prejudice therefrom. Additionally, as in cases of procedural default, even a petitioner who fails to establish cause and prejudice may nonetheless have his "default"— i.e. his failure to raise a claim in a previous habeas petition—excused if he can show that the failure to hear his claim will result in a fundamental miscarriage of justice. *Id.*

As the Court has made clear in its procedural default cases, "cause ... requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986); *see also Coleman v. Thompson*, —— U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *McCleskey v. Zant*, 111 S.Ct. at 1472 ("For cause to exist, the external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim,

---

**6.** The Court focused on the "unity of structure and purpose in the jurisprudence of state procedural defaults and abuse of the writ." *McCleskey v. Zant*, 111 S.Ct. at 1470. In particular, the Court noted that:

[T]he doctrines of procedural default and abuse of the writ are both designed to lessen

the injury to a State that results through reexamination of a state conviction on a ground that the State did not have the opportunity to address at a prior, appropriate time; and both doctrines seek to vindicate the State's interest in the finality of its criminal judgments.

*Id.*

must have prevented petitioner from raising the claim."); *Amadeo v. Zant,* 486 U.S. 214, 222, 108 S.Ct. 1771, 1776–77, 100 L.Ed.2d 249 (1988). The exception to cause for fundamental miscarriages of justice is a narrow one. It applies only in "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey v. Zant,* 111 S.Ct. at 1470; *Murray v. Carrier,* 477 U.S. at 495–96, 106 S.Ct. at 2649–50 ("actually innocent"); *Dugger v. Adams,* 489 U.S. 401, 410–12 n. 6, 109 S.Ct. 1211, 1220 n. 6, 103 L.Ed.2d 435 (1989).

We suggested in *Coleman* that a successive petition—i.e., one alleging claims raised and reached on the merits in earlier petitions—would be evaluated under the "factual innocence" test of *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), or the three-part test of *Sanders v. United States,* 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963) (successive petition would be dismissed if same ground was previously argued and determined adversely to petitioner and if the "ends of justice" would not be served by reaching merits of successive petition). *McCleskey* does not appear to refine the successive petition analysis, except that "the exception to cause for fundamental miscarriages of justice gives meaningful content to the otherwise unexplained 'ends of justice' inquiry mandated by *Sanders.*" *McCleskey v. Zant,* 111 S.Ct. at 1471.

Once the state raises abuse of the writ and pleads it with particularity, "the burden shifts to the petitioner to show, by a preponderance of the evidence, that he has not abused the writ procedure." *Coleman v. Saffle,* 869 F.2d at 1381; *see also McCleskey v. Zant,* 111 S.Ct. at 1470;

*Price v. Johnston,* 334 U.S. 266, 292, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1948). We apply these principles to the issues here, holding that Andrews has presented a successive petition with respect to the napkin incident and that he has abused the writ by raising now his claim based on the recidivism testimony.[7]

### B. *Napkin Incident.*

■ Andrews makes two claims relating to the napkin incident. One of these claims the magistrate judge and district court held procedurally barred; the other they dismissed as an abuse of the writ because it had been determined on its merits in his previous habeas petition. We hold that both claims were previously determined on their merits and that they therefore are brought in a successive habeas petition and are properly dismissed.

These allegations of prejudice arise out of an incident which occurred during Andrews' trial in 1974. While the jury was having lunch at a restaurant, one of the jurors discovered a napkin with a written depiction of a hanging along with the words "Hang the Niggers."[8] The trial judge conducted a hearing at which the bailiff testified to the facts surrounding the napkin incident. The trial court denied Andrews' motion for a mistrial and did not conduct a voir dire of the jury or otherwise question the jurors as to the effect, if any, of the note on them. No request for a voir dire was made by any party. The court did admonish the jury to "disregard the communications received from foolish persons and ignore the same," T–14 at 2456, and repeated a similar admonition many times throughout the trial.[9]

---

**7.** We apply *McCleskey* to this case on collateral review, because *McCleskey* involves a clarification of a procedural rule, not a change in substantive law. It may therefore apply retroactively. Even were *McCleskey* not to apply retroactively, we would still find an abuse of the writ in this case under standards existing prior to *McCleskey.*

**8.** At the time of this incident, hanging was a legally authorized method of execution in Utah.

**9.** For example, at the close of testimony on the day of the napkin incident, before dismissing

the jury for the day, the judge cautioned the jury as follows:

[D]o not speak to anyone about the case and do not permit anyone to speak to you about the case and, of course, do not decide it until it is finally submitted to you.

From time to time jurors and judges and people like that have people who run up to them and say I want to speak to you and they will say something and that type of thing. I urge you strongly to take the attitude that I do, I always think I know a lot more about it than somebody who reads about it in the

Andrews argues that the trial court's failure to take "meaningful action to determine the prejudicial effect of that communication or to counteract it" deprived Andrews of his right to a fair and impartial jury, as guaranteed by the Sixth, Eighth and Fourteenth Amendments. The magistrate judge subdivided this claim into two issues. First, he considered Andrews' claim of a constitutional violation by virtue of the court's failure to voir dire or otherwise inquire of the jury as to the prejudicial effect of the "napkin incident." Second, he considered the more general claim that the exposure to the napkin impermissibly prejudiced the jury.

As to the first issue—failure to voir dire the jury—the magistrate judge and district court concluded that this claim had never been presented to any Utah court and was, accordingly, not exhausted. However, after determining that there was no available state remedy on this issue, the magistrate judge and district court held that the claim was procedurally barred under *Teague v. Lane*, 489 U.S. at 298, 109 S.Ct. at 1068, and Andrews failed to establish cause for or prejudice from the procedural default.[10]

As to the second claim—jury prejudice, by virtue of the jury's exposure to the napkin—the magistrate judge and district court concluded that the issue had been previously presented to federal courts and rejected on its merits, and it was therefore an abuse of the writ to "reopen" this issue.

We agree with the district court that this issue has been raised before, both in the federal district court and in this court, as well as in the state courts. It has been rejected on its merits. *See Andrews IV*, 600 F.Supp. 408, 419 (napkin incident did not "violate petitioner's constitutional rights."); *Andrews V*, 802 F.2d at 1260 (this court adopted district court opinion concerning the treatment of napkin incident.) Thus, we affirm the district court's conclusion that Andrews has had a "full determination" of this issue on the merits in a prior habeas proceeding.

As to the issue of failure of the trial court to voir dire the jury or otherwise inquire as to the prejudicial effect of the napkin incident, which issue the district court held procedurally barred under *Teague*, Andrews argues that it *was* raised in his first federal habeas petition, and rejected by the district court. He also argues it was raised in at least one previous state court proceeding, *Andrews II*, 607 P.2d 816 (first state collateral proceeding).

We agree with Andrews that a careful reading of his briefs and arguments in prior proceedings indicates that he did in fact raise the issue of lack of adequate inquiry of the jury before.[11] It was, indeed, rejected on the merits by the federal district court in *Andrews IV*, 600 F.Supp. at 419, and affirmed on appeal by this court.

newspapers. I don't pay any attention to it, just shun them and just get rid of the whole idea and give no importance to the matter, if anybody persists or if anybody does anything of a serious nature along this line, please let the Bailiff know.
T–14 at 2560; *see also* T–15 at 2644, 2657, 2720, 2767; T–16 at 2857; T–17 at 3162; T–18 at 3236, 3245, 3283; T–19 at 3333, 3372, 3504; T–20 at 3605, 3708; T–21 at 3714, 3764.

10. In *Teague*, the Court held that the defendant's failure to raise his *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), claim at trial or on appeal prevented him, under Illinois law, from raising it in collateral proceedings. Since collateral relief was clearly "unavailable" under state law, the Court held the defendant had exhausted his state remedies, but that he was procedurally "barred from raising the *Swain* claim in a federal habeas corpus

proceeding unless he c[ould] show cause for the default and prejudice resulting therefrom." *Teague v. Lane*, 489 U.S. at 298, 109 S.Ct. at 1068.

11. In his first federal habeas petition, *Andrews IV*, 600 F.Supp. 408, Andrews argued:
 Petitioner's convictions of first degree murder and aggravated robbery were obtained in violation of his right to a fair and impartial jury and Due Process of Law under the Sixth and Fourteenth Amendment ... because the jury that convicted him of those crimes was actually predisposed to find him guilty and sentence him to death due to ... the receipt of the jury during trial of a note urging them to "hang the niggers" ... and *the trial court failed ... to fully inquire about that influence.*
 Second Amended Petition for Writ of Habeas Corpus at 9, Appendix to Brief of Petitioner/Appellant at 33.

Since Andrews has had a full determination on the merits of both of these issues, he must now demonstrate why the "ends of justice" require a reconsideration of these issues in this successive petition. *See McCleskey v. Zant,* 111 S.Ct. at 1471 (equating "ends of justice" inquiry with "fundamental miscarriage of justice" inquiry of procedural default cases); *Kuhlmann v. Wilson,* 477 U.S. at 452–54, 106 S.Ct. at 2626–27; *Sanders v. United States,* 373 U.S. at 15, 83 S.Ct. at 1077; *Coleman v. Saffle,* 869 F.2d at 1380; 28 U.S.C. § 2244(b); Rule 9(b). Andrews argues as justification for reopening these issues a recent Fourth Circuit case, *Stockton v. Commonwealth,* 852 F.2d 740 (4th Cir.1988), *cert. denied,* 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989) as well Tenth Circuit authority. We reject the argument that those cases justify a reconsideration of these issues and conclude that Andrews has filed a successive petition which was properly dismissed as it relates to the napkin incident.[12]

■■■ Alternatively, were we to conclude that these issues are not presented in a successive habeas petition, and subject to dismissal on that ground, we would reject them for numerous additional reasons. First, while the magistrate judge and district court correctly concluded that this circuit has at times required inquiry of jurors where a nonfrivolous allegation of improper external influence on the jury has been made, they also correctly noted that "there does not appear to be any clear standard of inquiry that has been imposed by the Supreme Court on state trials." Report and Recommendation at 31 n. 25, R. Vol. I Tab 33. Andrews directs us to no such standard to be applied to this case. Second, even if we were to conclude that there is, in certain circumstances, a constitutional right to a jury voir dire in a state proceeding, such a rule would be a new one within the meaning of *Teague v. Lane,* 489 U.S. 288, 299–310, 109 S.Ct. 1060, 1068–1075, 103 L.Ed.2d 334 (1989), and would accordingly be inapplicable in our collateral review of this case.[13] Third, as we have already indicated, no motion for a voir dire was ever made, even though two motions for a mistrial were made based on the incident. Thus, in addition to constituting a successive petition dismissable as an abuse of the writ, Andrews' claims relating to the napkin incident can be dismissed for numerous additional reasons. We now apply abuse of the writ principles to Andrews' claims arising out of the recidivism testimony.

### C. *Testimony On Recidivism.*

The magistrate judge and district court rejected on its merits Andrews' claim based on certain testimony during the penalty phase of his trial phase concerning the rate of recidivism among convicted murderers. We now hold that Andrews has abused the writ by raising this issue now; alternatively, we reject it on its merits.

The facts upon which this issue is based also arose out of the Utah Board of Pardons hearing conducted in August, 1989. At Andrews' original sentencing proceedings, Dr. Allen Roe, a psychologist then employed by the Utah Department of Corrections, testified for the prosecution. As part of his testimony, he stated his recollection that three people in Utah who had been convicted of murder had been released and then murdered again:

> Q: Now, sir, have you done any surveys or are you acquainted factually with, made yourself acquainted factually with whether or not any persons who have served or were serving for murder in the first degree after they had either served or by any means been released or while

---

**12.** We agree with the district court that *Stockton* is distinguishable from this case. In *Stockton,* not only was the contact with the jury more extensive than in Andrews' case, but also in Andrews' case, the court was promptly informed of the contact and took immediate steps to admonish the jury to disregard the contact. In *Stockton,* by contrast, the court had no opportunity to try to dispel any prejudicial influence because it was not informed of the incident until after the jury reached its verdict. Similarly, we find no excuse based on the Tenth Circuit cases to which Andrews refers us.

**13.** *See* note 37, *infra* and accompanying text.

incarcerated, had committed another murder?

A: I know of some who have been convicted of murder, I don't know whether it's murder first or second who were later released and then committed another murder, yes.

Q: Could you tell me what your information is in connection with this?

A: Nothing personal, just from being in the prison. I haven't done a survey on it as such, so I don't know how many.

Q: You do not know how many?

A: No, but I know personally, I think, I remember three.

Q: Who had been convicted of murder and had been released and committed another murder?

A: Yes, I think, so, three.

T-23 at 4165. On cross-examination, he gave the names of the three he believed, from memory, had murdered and then murdered again.

Andrews asserts that in July and August, 1989, in connection with preparation for his Board of Pardons hearing and during the course of that hearing, he learned from Dr. Kay Gillespie, a professor at Weber State College in Ogden, Utah, and an expert in crime and corrections in Utah, that Dr. Roe's testimony was apparently erroneous, in that two of the three inmates named had not, in fact, murdered and murdered again after release from prison.

Like the juror exclusion issue, this issue was raised for the first time before the Utah Supreme Court in Andrews' petition in *Andrews VII*. Without addressing procedural default, the Utah Supreme Court rejected the claim on the merits, and held that any error in Dr. Roe's testimony was insufficient "to have played any role whatsoever in the jury's determination of the appropriate penalty under the circumstances." *Andrews VII*, 779 P.2d at 229.

Andrews then presented this issue, along with the juror exclusion issue, in a supplement to the current habeas petition. The magistrate judge permitted discovery and received affidavits pertaining to the matter. Among the affidavits received were two which stated that Utah State Prison files indicated that in fact four people in Utah had murdered, been released from prison, and had murdered again.[14] Of the four, one was among the three originally named by Dr. Roe at Andrews' sentencing proceeding. All four cases occurred prior to Dr. Roe's testimony at Andrews' trial. Dr. Roe submitted an affidavit in which he stated that he did not have his file with him at Andrews' trial and that he had testified from memory, as the testimony itself shows.

The magistrate judge and district court concluded that there was no procedural bar to a consideration of the merits of Andrews' claim, nor was there an abuse of the writ.[15] They went on, however, to reject the argument on its merits. The magistrate judge stated:

[T]he evidence given by Dr. Roe as to the number of recidivist murderers from the U.S.P. was not false, but true as to the tenor of the testimony and as to Dr. Roe's beliefs. It was also true in fact. Only the names of two individuals, brought out on cross-examination by co-defendant's counsel, were in error.

Report and Recommendation at 63, R.Vol. II Tab 97. The magistrate judge then concluded, "the evidence was not material and any falsity was harmless beyond a reasonable doubt." *Id.* at 66.

 We hold that Andrews' presentation of this issue for the first time in this supplement to his second federal habeas petition constitutes an abuse of the writ. *See McCleskey v. Zant,* —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Delo v.*

---

**14.** As Andrews argues, only one of the four cases involved a person convicted of *first degree* murder, who was released and murdered again. The remaining three cases involved people who were convicted of manslaughter or second degree murder who were released and had murdered again.

**15.** The magistrate judge concluded that, because Andrews had no reason to question Dr. Roe's testimony until Dr. Gillespie called it into question in 1989, he asserted "new and different grounds than those raised in the first petition for habeas corpus." Report and Recommendation at 62–63, R.Vol. II Tab 97.

*Stokes,* 495 U.S. 320, 110 S.Ct. 1880, 109 L.Ed.2d 325 (1990) (per curiam); *Coleman v. Saffle,* 869 F.2d at 1380; 28 U.S.C. § 2244(b); Rule 9(b). Andrews has failed to establish "cause" for not having raised this issue in his earlier federal habeas petition.

> Abuse of the writ doctrine examines *petitioner's* conduct: *the question is whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter through the habeas process, see* 28 U.S.C. § 2254 Rule 6 (Discovery); Rule 7 (Expansion of Record); Rule 8 (Evidentiary Hearing). *The requirement of cause in the abuse of the writ context is based on the principle that petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition.*

*McCleskey v. Zant,* 111 S.Ct. at 1472 (emphasis original in part, added in part). The existence of Dr. Roe's testimony, including his specific reference by name to three alleged recidivist murderers, was obviously a matter of trial record since 1974. There is no argument that Utah State Prison records were not available and accessible to Andrews during the last 15 years. Accordingly, Andrews has abused the writ by raising this issue now.[16]

▪▪▪ Even were we to reach the merits of this issue, we would affirm the district court's conclusion that the claim is without merit. As the magistrate judge specifically found, Dr. Roe's testimony was evidently based on his memory and recollection and was couched in those terms,

rather than upon a survey or study. It was only one part of the substantial testimony presented at the sentencing phase of Andrews' trial, and was not unduly or repeatedly emphasized by the prosecution in its arguments to the jury. Furthermore, it was substantially truthful, in that the *rate* of recidivism was not substantially misstated, only the *names* of the recidivist murderers.[17] If required to reach the merits, we would affirm the conclusion that the testimony was "not material and any falsity was harmless beyond a reasonable doubt." Report and Recommendation at 66, R.Vol. II Tab 97.[18]

### III.

### MERITS OF EXCLUSION OF BLACK JUROR CLAIM.

This issue arose out of statements made at a hearing before the Utah Board of Pardons on August 10 and 11, 1989. At Andrews' trial, the prosecutor, Robert Newey, excused the only black member of the jury panel, James Gillespie, by means of a peremptory challenge. The exercise of that peremptory challenge followed a lengthy voir dire of Gillespie, portions of which are as follows:

THE COURT: Your vocation?

A: I am a peace officer for the State of Utah.

. . . . .

Q [by Athay]: Would it be fair to say, Mr. Gillespie, that during this period of time [during his years in law enforcement] that you have developed an attitude that favors prosecution in criminal cases?

---

**16.** We also conclude that no fundamental miscarriage of justice will occur as a result of our failure to consider this issue. *See McCleskey v. Zant,* 111 S.Ct. at 1470.

**17.** Nor does it matter that not all of the recidivist murderers committed first degree murder first.

**18.** Additionally, this court has recognized that "[e]xplicit and implicit findings by state trial and appellate courts 'shall be presumed to be correct,' 28 U.S.C. § 2254(d), unless one of the

seven factors listed in section 2254(d) are present, or the federal court concluded that the state court findings are not fairly supported by the record." *Case v. Mondragon,* 887 F.2d 1388, 1392 (10th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1490, 108 L.Ed.2d 626 (1990). To the extent the Utah Supreme Court made factual *findings in its determination that any error in* Dr. Roe's testimony was not "sufficient to have played any role whatsoever in the jury's determination of the appropriate penalty under the circumstances," *Andrews VII,* 779 P.2d at 229, we presume those findings to be correct.

A: I believe so, yes.

Q: You believe the people against whom you present a case are in fact guilty, don't you?
A: I suppose that would be correct.
Q: Do you also assume that your fellow officers proceed against guilty people?
A: Yes, sir; I guess so.
Q: So you do not generally presume those against whom your fellow officers file complaints and prepare cases to be innocent. Correct?
A: It's depending on sometimes the officer; yes, sir.

T–2 at 255, 270, 281. Gillespie also testified that he was acquainted with and had worked with many of the officers investigating the murders in question.

Immediately following the voir dire, Gil Athay, Selby's attorney, challenged Gillespie for cause:

I also move for his challenge for cause on the basis of ... the existence of a state of mind on the part of the juror which leads to a just inference in the case that he will not act with entire impartiality with respect to the issues.

I realize that Mr. Gillespie has indicated to the court than he can discount the fact that he has worked with some over thirty of the prespective [sic] witnesses in this case actively as a law enforcement officer.

I realize that he has indicated to this court that he can put all of this aside and view the evidence different. I think the last few questions that were propounded and the last few responses elicited from Mr. Gillespie indicated that he, himself has not presumed that the people against whom he proceeds against to be innocent and that except for a couple of officers he does not presume people to be innocent against whom his fellow officers proceed.

I submit the background, the extensive involvement with law enforcement, the extensive involvement in the presentation of criminal cases for prosecution leads this court to the only possible conclusion

that his state of mind is such that we can infer that he could act impartially.

*Id.* at 283–84. Caine then specifically stated: "On behalf of Mr. Andrews we agree with the sentiments expressed by Mr. Athay and challenge the juror for cause." *Id.* at 284. After some discussion, the prosecutor, Newey, stated:

I do not challenge this juror for cause, but to protect against the possibility of any retrial of the case on possible error or to eliminate an appeal on this point which will take a great number of hours and so forth, the State will agree with Mr. Athay that he should be excused, although we submit he is, we do not feel that he should be excused for cause.

*Id.* at 286–87. Counsel for Keith Roberts, Andrews' and Selby's co-defendant, refused to join in a stipulation that Gillespie be removed from the jury for cause. Newey subsequently exercised his tenth, and last, peremptory challenge to excuse Gillespie. Andrews made no objection to Gillespie's exclusion.

At the Board of Pardons hearing, held in August, 1989, Newey testified for the state. When questioned by a member of the Board as to why he removed Gillespie from the jury, Newey indicated that part of the reason was that Gillespie was black and Newey felt Gillespie might be subject to "undue pressure." Appendix to Brief of Petitioner/Appellant at 76–78. In a subsequent hearing before the magistrate judge, Newey indicated he also challenged Gillespie because Gillespie had been a police officer, he was acquainted with and had worked with many of the officers investigating the murders in question, he "presumed" a person was guilty against whom he (Gillespie) investigated and presented a case, and because Newey was concerned about "reversible error" if he did not challenge Gillespie. Andrews focuses solely on Newey's statement to the Board of Pardons, arguing that the prosecutor's admitted racial basis for excluding Gillespie violated his Sixth, Eighth and Fourteenth

Amendment rights.[19]

█ Although Andrews has argued on many previous occasions that his trial was infected generally with racism, the precise argument here—that the only black juror on the voir dire panel was excluded by the prosecution because of race—had not been raised prior to Andrews' petition to the Utah Supreme Court in *Andrews VII*, filed shortly before his scheduled execution date of August 22, 1989.[20] The Utah Supreme Court declined to find the claim procedurally barred, stating:

> Since the issue did not arise until the testimony given by Judge Newey before the Board of Pardons, there is good cause under rule 65B(i)(4), Utah Rules of Civil Procedure, which warrants addressing the issue on its merits even though there have been previous petitions for writs of habeas corpus filed in this Court.

*Andrews VII*, 779 P.2d at 228. Based on its review of the trial transcript of Gillespie's actual voir dire examination, the court concluded:

> [I]t appears that the State's reason for being willing to stipulate to the removal of Mr. Gillespie and later for the exercise of a peremptory challenge to strike him from the venire was to protect against possible error and a subsequent appeal that might be based on that issue. In all events, the record is undisputed that counsel for William Andrews clearly agreed to the removal of Mr. Gillespie after the motion to strike for cause was denied. Having twice sought to remove Mr. Gillespie from the jury panel, William Andrews cannot now claim that he was somehow prejudiced by the State's removal of Mr. Gillespie. For these reasons, we do not believe that petitioner's

constitutional rights were in any way prejudiced.

*Id.* at 229. Two justices dissented from the court's holding on this ground, concluding that they would refer the issue to the district court for an evidentiary hearing. *Id.* To the extent the Utah court's conclusions included factual findings regarding the reasons for striking Gillespie from the jury, we accord those findings a presumption of correctness. *See Case v. Mondragon*, 887 F.2d 1388, 1392 (10th Cir.1989).

Andrews then presented this issue to the federal district court in a supplement to his current habeas petition. The magistrate judge permitted discovery and held a hearing on the issue. He also requested affidavits or other materials on why this issue, as well as the issue regarding the allegedly false testimony concerning recidivism, were not presented earlier. On the merits of this claim, the magistrate judge and district court concluded that Andrews failed to establish a violation of his constitutional rights.

█ Both parties agree that the relevant standard for evaluating Andrews' claim is that of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).[21] Under the *Swain* standard, a defendant typically must show systematic exclusion of black jurors "in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be...." *Id.* at 223, 85 S.Ct. at 837; *see also Ford v. Georgia*, — U.S. ——, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991); *Allen v. Hardy*, 478 U.S. at 258, 106 S.Ct. at 2879–80; *United States v. Jenkins*, 701 F.2d 850, 860 (10th Cir.1983) (*Swain* has been interpreted to require proof of "systematic and intentional conduct on the part of the Government calculated to exclude Blacks from juries."); *United States v.*

**19.** Andrews and his co-defendants are black; the victims in this case were all white.

**20.** Andrews argues it *was* raised in previous petitions, to the extent it could be without the benefit of Newey's statements before the Board of Pardons.

**21.** While the standard of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)

is arguably the more appropriate standard for a claim such as Andrews' (that the exercise of a particular peremptory challenge in a particular case is racially motivated), *Batson* is not to be applied retroactively on collateral review of convictions which have become final before *Batson* was announced. *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (per curiam).

*Chalan,* 812 F.2d 1302, 1313 (10th Cir.1987) ("the Court [in *Swain* ] held that a defendant would have to show a pattern of discrimination by the prosecutor over a number of cases in order to establish a prima facie case of racial discrimination."), *cert. denied,* 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 565 (1988). The magistrate judge and district court concluded that "[t]here is no evidence, at all, of systematic exclusion of blacks from Weber County juries." Report and Recommendation at 47, R.Vol. II Tab 97.[22]

■■ Andrews relies, however, on an exception to the *Swain* systematic exclusion standard, which he presented to the Utah Supreme Court in *Andrews VII.*[23] The case most frequently cited for this exception is *Weathersby v. Morris,* 708 F.2d 1493 (9th Cir.1983), *cert. denied,* 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984), in which the court stated:

> Cases where the prosecutor at trial volunteers his or her reasons for using peremptory challenges to exclude from the petit jury an identifiable group, present a situation distinguishable from *Swain.* In such cases, the court does not conduct the type of inquiry barred by *Swain.* The prosecutor's motives have been voluntarily put on the record and the prosecutor can no longer be cloaked by the presumption of correctness. Our reading of *Swain,* convinces us that in such circumstances a court need not blind itself to the obvious and the court may review the prosecutor's motives to determine whether "the purposes of the peremptory challenge are being perverted."

*Id.* at 1496 (quoting *Swain v. Alabama,* 380 U.S. at 224, 85 S.Ct. at 838); *see also*

*Nevius v. Sumner,* 852 F.2d 463, 467–68 (9th Cir.1988) (following *Weathersby),* cert. denied, 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989); *Garrett v. Morris,* 815 F.2d 509, 511 (8th Cir.1987) ("Although the Supreme Court [in *Swain* ] declined to require an inquiry into a prosecutor's decision to remove blacks from a particular jury, we believe that where, as here, the prosecutor volunteers the reasons for his actions and makes them part of the record, he opens the issue up for review."), *cert. denied,* 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 191 (1987). This exception also finds some support in language from concurring Supreme Court opinions. *See Teague,* 489 U.S. at 325, 109 S.Ct. at 1083 ("There is substantial force to petitioner's argument that the volunteered explanations made this more than the 'ordinary exercise of challenges' to which *Swain's* systematic proof requirement applies, and that the trial court erred by failing to scrutinize the prosecutor's excuses.") (Stevens, J., concurring) (quoting *Swain,* 380 U.S. at 227, 85 S.Ct. at 839); *Batson v. Kentucky,* 476 U.S. 79, 101 n.*, 106 S.Ct. 1712, 1725 n. *, ("Nor would it have been inconsistent with *Swain* for the trial judge to invalidate peremptory challenges of blacks if the prosecutor, in response to an objection to his strikes, stated that he struck blacks because he believed they were not qualified to serve as jurors") (White, J., concurring).

The state argues, and the district court held, that this exception only applies when the prosecutor *volunteers* his reasons *at trial* and makes those reasons part of the trial record. That was clearly not the case here, where the allegedly discriminatory

---

22. Andrews' trial actually was held in Davis County, Utah. It was moved to Davis County from nearby Weber County, the location of the crimes, pursuant to a motion for change of venue filed by the state. The prosecutor, Robert Newey, was the Weber County Attorney. While Andrews correctly points out that the magistrate judge and district court erred in stating that the trial occurred in Weber County, there was no error in looking at systematic discrimination in Weber County in evaluating the *Swain* claim. The standard in *Swain* relates to the conduct of the prosecutor. *See Swain,* 380 U.S. at 227, 85 S.Ct. at 839–40. In this case, the relevant conduct of Newey, as the Weber County Attorney, relates to trials in Weber County.

23. Because he argued his *Swain* claim to the Utah Supreme Court under the exception concerning prosecutorial statements of allegedly discriminatory motives, not as a *Swain* systematic exclusion claim, the state has argued that the *Swain* systematic exclusion claim is procedurally barred under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See* note 10, *supra.*

reasons were given many years later when the prosecutor was directed to answer questions at Andrews' Board of Pardons hearing.

We affirm the district court's rejection of the merits of this claim. We agree that Andrews has made no showing of systematic exclusion of blacks from juries by the Weber County Attorney. We also hold the *Weathersby* exception to *Swain* inapplicable here, where the prosecutor never volunteered his reasons for challenging Gillespie at trial.[24]

 Even were we to consider whether the exclusion of Gillespie violated Andrews' constitutional rights, we would affirm the district court's conclusion that it did not. As we have noted, factual findings by the Utah Supreme Court are presumed correct, unless one of the seven factors listed in 28 U.S.C. § 2254(d) are present. *Case v. Mondragon*, 887 F.2d at 1392. The Utah court concluded that "the State's reason ... for the exercise of a peremptory challenge to strike [Gillespie] from the venire was to protect against possible error and a subsequent appeal that might be based on that issue." *Andrews VII*, 779 P.2d at 229.

Further, the magistrate judge held a hearing on this issue and made factual findings, including the following:

> The exclusion of juror Gillespie based on his race was not because of any belief that a black person would not be fair or could not properly serve, but was because of a belief that Gillespie might be the focus of pressure and because of the actions of defense counsel seeking to exclude Gillespie.

Report and Recommendation at 21, R. Vol. II Tab 97. Not only are these findings not clearly erroneous, the record amply supports these conclusions. Gillespie's responses to questions on voir dire clearly

disclosed a strong prosecution bias, and Andrews' and Selby's attorneys sought to excuse him for cause on that basis. Their actions were consistent with motions by defense counsel to strike numerous other jurors for cause. No constitutional error occurred when the state used a peremptory challenge to excuse Gillespie.

## IV.

### INEFFECTIVE ASSISTANCE OF COUNSEL AND LESSER INCLUDED OFFENSE INSTRUCTION.

Andrews' remaining claims are: (1) that the trial court committed constitutional error by failing to instruct the jury on the lesser included offense of second degree murder; and (2) that his trial counsel was ineffective in failing to differentiate his culpability from that of his co-defendant, Selby, and in failing to ask for and argue on appeal regarding a lesser included offense instruction. Both claims are, to a large extent, related. We reject them for multiple reasons. Both can be dismissed as an abuse of the writ; additionally, and alternatively, the lesser included offense claim is unavailable under *Teague*'s nonretroactivity doctrine, the ineffectiveness claims are procedurally barred, and the ineffectiveness claims fail on their merits. We briefly explain the context in which these claims arose, and then address the legal basis for rejecting each one.

#### A. *Factual Background.*

1. Lesser Included Offense Instruction.

At Andrews' trial, the court instructed the jury on the elements of first degree murder only. Andrews did not request an instruction on second degree murder. His co-defendant, Selby, requested a second degree murder instruction, although not under the same statutory provision upon

---

**24.** The state is correct in noting that those cases which have applied the exception have all involved the prosecutor's providing his reasons for challenging jurors at trial, not many years later at a clemency hearing. While no court has articulated the rationale for limiting this exception to situations where the prosecutor's reasons are voluntarily disclosed at trial or closely con-

temporaneously to trial, we think there is such a rationale. If a prosecutor's comments at *any* time after a trial may be susceptible to review, and may render a jury verdict unconstitutional, there would be no finality to any jury trial. Similarly, we agree with the state that Newey's comments can hardly be considered voluntary under the circumstances of this case.

which Andrews now relies.[25] Andrews relies upon a section of the second degree murder statute which provided:

> Criminal homicide constitutes murder in the second degree if the actor:
>
> . . . . .
>
> (d) while in the commission, attempted commission, or immediate flight from the commission or attempted commission of robbery ... causes the death of another person other than a party.

Utah Code Ann. § 76–5–203(1)(d).[26] Andrews argues that the evidence presented at his trial supports the claim that he lacked the intent to kill during the robbery, which is required for the first degree murder statute's element of "intentionally or knowingly" causing the death of another. Rather, Andrews argues, the evidence supports a finding that he "cause[d] the death of another person" during one of the enumerated felonies contained in section 76–5–203(1)(d).[27] Because the trial court did not instruct the jury on the elements of second degree murder, however, the jury was forced to choose between convicting Andrews of first degree murder and acquittal. That forced choice, Andrews argues, violated his Sixth, Eighth and Fourteenth Amendment rights. He also argues that the Utah Supreme Court failed to consider this issue in his direct appeal, despite that court's statement that it would consider all issues, including those not specifically raised by Andrews' attorney, and despite the fact that it did address his co-defendant's, Selby's, arguments relating to lesser included offense instructions.

Andrews did not raise this issue until his third state postconviction petition in October, 1987 (*Andrews VI*). In that petition, he argued he failed to raise the issue earlier because the state and federal decisions on which the claim is based had not been decided and were "not reasonably available or foreseeable at the time of Petitioner's appeal and previous postconviction petition." Petition for a Writ of Habeas Corpus or for Post–Conviction Relief, Third District Court at 7. He also relied upon the ineffectiveness of his trial and appellate counsel to explain his failure to raise it in his direct appeal or his first state postconviction relief petition. Both the state district court and the Utah Supreme Court in *Andrews VI* found the claim to be procedurally barred, and did not reach its merits. The magistrate judge and district court below held the claim procedurally barred and, additionally, held that *Teague*'s nonretroactivity doctrine prevented consideration of the claim.

### 2. Ineffective Assistance of Counsel.

At trial, and on his direct appeal, Andrews was represented by court-appointed counsel, John Caine, a Weber County public

---

25. Utah Code Ann. § 76–5–203 provided:
 (1) Criminal homicide constitutes murder in the second degree if ... the actor:
 (a) Intentionally or knowingly causes the death of another; or
 (b) Intending to cause serious bodily injury to another, he commits an act clearly dangerous to human life that causes the death of another; or
 (c) Acting under circumstances evidencing a depraved indifference to human life, he recklessly engaged in conduct which creates a grave risk of death to another and thereby causes the death of another; or
 (d) While in the commission, attempted commission, or immediate flight from the commission or attempted commission of robbery ... causes the death of another person other than a party.
 Selby submitted proposed instructions based upon § 76–5–203(1)(a), (1)(b) and (1)(c). As discussed more fully, *infra,* Andrews relies upon § 76–5–203(1)(d).

26. The statute has since been slightly amended.

27. The facts of this case have been recounted in detail in many of the previous written opinions, both state and federal. We do not recount them again here. However, in regard to the issue of the lesser included offense instruction, the evidence at trial did strongly suggest that all the victims in this case were actually shot by Andrews' co-defendant, Selby, out of the presence of Andrews. The evidence also established that Andrews participated in the administration of a caustic liquid cleaner (Drano) to the victims, which, according to expert medical testimony at trial, could have killed the victims, but for the subsequent gunshot wounds, had they not received prompt medical attention. T–13 at 2199–2200, 2237–40. Thus, the dissent's brief recitation of selected facts to portray Andrews as innocent of any significant involvement in the crimes in this case is, in our view, simply inconsistent with the record.

defender. At the time he represented Andrews, Caine had been a member of the bar for less than one year and had never before handled a capital murder case, although he was apparently handling another murder trial contemporaneously with this trial. *See* PT-1 at 46, 51. Andrews argues that Caine failed to effectively pursue his chosen trial strategy of differentiating Andrews' culpability for the three murders from that of his co-defendant, Selby, and that he failed to recognize the availability under Utah law of a jury instruction on second degree murder. Caine did not raise the lesser included offense instruction issue in Andrews' direct appeal nor did he raise it in his first state postconviction petition. Caine remained Andrews' counsel through the appeal of his first state postconviction relief petition to the Utah Supreme Court.

Shortly after that first state postconviction relief petition was filed, additional counsel, Timothy Ford, appeared voluntarily on Andrews' behalf, and filed an amended postconviction petition, which likewise failed to raise the issue of ineffectiveness and the second degree murder instruction. Andrews has continued to be represented by Ford, as well as other counsel at various times. Andrews argues Caine's ineffec-

tiveness at trial and on appeal violated his Sixth, Eighth and Fourteenth Amendment rights.

The Utah Supreme Court in *Andrews VI* refused to reach the merits of these claims of ineffectiveness, holding that they were procedurally barred. The magistrate judge and district court held that Andrews' claim of counsel's ineffectiveness in failing to differentiate his culpability from that of Selby had never been presented to the Utah state courts and was therefore not exhausted.[28] However, they concluded that Andrews had no available state remedy on the issue, and the issue was, accordingly, procedurally barred under *Teague v. Lane,* 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989). They held that the ineffectiveness claim for failing to ask for and argue a lesser included offense instruction was procedurally barred.

### B. *Abuse of the Writ: Lesser Included Offense Instruction and Ineffectiveness Claims.*

■ The state has argued that Andrews has abused the writ by raising all of these claims—the failure to instruct on second degree murder as well as the two-part ineffectiveness claim—for the first time in his second federal habeas petition.[29] This

---

**28.** We disagree with the lower court's conclusion that this ineffectiveness claim was never raised before the Utah state courts. The claim was not raised in Andrews' petition to the state district court in *Andrews VI,* although Andrews argues it was raised in the briefs and in oral argument before the district court. In the petition itself, ineffectiveness was only mentioned as an explanation for the failure to raise the lesser included offense instruction issue earlier. It *was,* however, clearly raised as a distinct issue in Andrews' Utah Supreme Court brief, although the court's opinion in *Andrews VI* repeated Andrews' claims as stated in his actual habeas petition, which discussed ineffectiveness only as cause for failing to raise the lesser included offense issue earlier. Andrews' brief to the Utah Supreme Court includes the following argument:

> Petitioner's court-appointed counsel provided ineffective assistance at both the trial and on the direct appeal.... He failed to adequately prepare for trial; he failed to effectively cross-examine the State's key witness by confronting him with his sworn testimony at the preliminary hearing. That testimony conflicted in material respects with his trial testimony as

to Mr. Andrews' participation in the binding of two of the hostages, the pouring of the liquid after each dose was administered by Mr. Pierre, the taping of the victim's mouths and when they were taped, and Mr. Andrews' refusals to follow Mr. Pierre's orders.... *He filed only a seven-page brief and totally failed to distinguish Mr. Andrews' participation from that of Mr. Pierre.*

Brief of Appellant, Utah Supreme Court No. 880024 at 23–24, *see also id.* at 29–39 (emphasis added).

Furthermore, the Utah Supreme Court did *not* refuse to consider the issue because it was not raised in the district court below; rather, the Supreme Court refused to consider the issue because Andrews failed to show good cause for not raising it either on direct appeal or in previous postconviction proceedings.

**29.** Despite the dissent's suggestion to the contrary, the many pleadings and other documents filed in this case have been permeated with the allegation of abuse of the writ. Indeed, the state's brief on appeal asserts that "[a]ll issues currently presented to the federal court either have been or could have been raised in the prior

argument has been given new vigor by the Supreme Court's recent decision in *McCleskey v. Zant*, —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), where, as we have indicated, the Court adopted the *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), cause-and-prejudice test for abuse of the writ. Accordingly, unless Andrews establishes "cause" for his failure to raise these issues in his first federal petition, we must dismiss them as abusive. We hold he has failed to establish such "cause."

### 1. Cause and Prejudice.

As cause for his failure to raise these claims earlier Andrews argues: (1) Caine remained as his counsel on direct appeal and in his first state postconviction petition, and would thus not be expected to raise his own ineffectiveness or to raise the lesser included offense issue; and (2) the prejudice resulting from Caine's alleged ineffectiveness, and the court's error in failing to instruct on second degree murder, did not become apparent because the federal and state court decisions regarding the availability of a second degree murder in-

struction tailored to fit Andrews' lesser culpability were not available or foreseeable at the time of Andrews' direct appeal and initial collateral proceedings, including his first federal habeas petition.[30] We reject these arguments.

■ Andrews' first argument is wholly without merit. Caine was not representing Andrews at the time of his first federal habeas petition; thus, no argument can be made based on Caine's continued involvement in this case or his alleged ineffectiveness in failing to bring the claim. The more significant argument concerns the allegedly unsettled state of federal and state law with respect to the availability of a lesser included offense instruction in Andrews' case. In particular, Andrews argues that *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), made clear for the first time the constitutional basis for the entitlement to a lesser included offense instruction. And not until 1986, in *State v. Hansen*, 734 P.2d 421 (Utah 1986), was it clear that such an instruction was available to Andrews under Utah law.[31] Accordingly, he argues, any error

---

lengthy history of appeal and post-conviction relief attempts." Brief of Appellee at 22. Abuse of the writ principles are discussed generally, and then more specifically with respect to two of the issues raised.

The dissent argues that the magistrate judge's recommendation, subsequently adopted by the district court, found no writ abuse with respect to either Andrews' ineffectiveness claim or his lesser included offense claim, and that the state's failure to appeal those holdings amounts to a waiver of the issue of abuse regarding those claims. Given the state's repeated assertion of writ abuse before the district court, the state has plead the matter with particularity. Its decision not to appeal the district court's adoption of one part of the magistrate judge's recommendation, which otherwise virtually completely agreed with the state's arguments, does not by itself constitute a waiver of the matter before this court, when the state continues to assert abuse of the writ in response to Andrews' appeal.

30. Andrews' argument regarding the lesser culpability issue is that, while it appeared that no lesser included offense was available to fit Andrews' involvement in the murders, the prejudice attributable to Caine's failure to differentiate between Andrews and Selby was not apparent.

31. In *Beck,* the Supreme Court held that the jury in a capital case must be permitted to consider a verdict of guilty of a lesser included offense if the evidence supports such a conviction. *Beck* involved an Alabama statute which specifically prohibited the trial judge from giving a jury the option of convicting a defendant of a lesser included offense in a capital case. The Court stated:

> [W]hen the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify conviction of a capital offense—the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.

*Beck v. Alabama,* 447 U.S. at 637, 100 S.Ct. at 2389.

Despite *Beck*'s narrow factual setting—a statute prohibiting an instruction on a lesser included offense in a capital case—*Beck* has been interpreted more broadly to establish "a constitutional right to a lesser included offense instruction when the death penalty is imposed and the evidence warrants the instruction." *Trujillo v. Sullivan,* 815 F.2d 597, 601 (10th Cir.), *cert. denied,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987).

from the failure to give the lesser included offense instruction, as well as the prejudice resulting from his counsel's failure to seek it and his failure to differentiate Andrews' and Selby's culpability for the crimes, were not apparent until the time he raised those issues in 1987 in *Andrews VI,* long after his first federal habeas petition was dismissed.

 The novelty of a constitutional claim may constitute cause for failing to raise the claim earlier. *Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984); *see Dugger v. Adams,* 489 U.S. 401, 407, 109 S.Ct. 1211, 1215, 103 L.Ed.2d 435 (1989). In this case, however, any novelty of his constitutional *Beck* claim cannot provide cause for having failed to raise the issue in his first federal petition because his federal petition was pending when *Beck* was decided, and the petition was not dismissed until 1984, some four years after *Beck* was decided. *Cf. Richardson v. Thigpen,* 883 F.2d 895, 899 (11th Cir.), *cert. denied,* 492 U.S. 934, 110 S.Ct. 17, 106 L.Ed.2d 631 (1989). Andrews asserts, however, that even though *Beck* was decided in 1980, any *Beck* claim depends upon the availability under state law of a lesser included offense fitting the circumstances of the crime charged and Utah law did not clearly so provide until *Hansen* in 1986. We disagree.

As indicated, at the time of Andrews' trial in 1974, Utah law provided that second degree murder included the situation where a person, in the course of committing certain enumerated felonies, including robbery,[32] "causes the death of another person other than a party." Utah Code § 76–5–203(1)(d). In 1983, in *State v. Norton,* 675 P.2d 577, 581 (Utah 1983), *cert. denied,* 466 U.S. 942, 104 S.Ct. 1923, 80 L.Ed.2d 470 (1984), the Utah Supreme Court interpreted the word "party" to mean "victim." Thus, that section of the second degree murder statute was not, under *Norton,* available to someone such as Andrews who allegedly caused the death of the *victims* of the robbery. In 1986, in *Hansen,* the Utah Supreme Court specifically overruled that portion of *Norton,* and held that "the 'other than a party' language can only refer to a co-felon and not the victim of the underlying felony." *State v. Hansen,* 734 P.2d at 427. Accordingly, under *Hansen,* the second degree murder statute could arguably be available to Andrews. Andrews asserts that, particularly in light of *Norton,* he could not have argued with certainty until 1986 that the trial court erred when it failed to give a second degree murder instruction. We reject that argument.

 Even assuming *Norton* should have been viewed as an absolute bar to raising the issue from 1983 until 1986,[33] *Norton* was obviously not a bar to raising the issue from the time of Andrews' trial until 1983. During that time, Andrews filed his first federal petition, and *Beck* gave a constitutional dimension to his claim that the trial court should have given the lesser included offense instruction. Any uncertainty as to Utah law existed only for three of the thirteen years which elapsed between Andrews' trial and his assertion of the lesser included offense issue in 1987. In our view, that does not constitute cause for failing to raise this issue in his first federal petition or in some timely filed amendment thereto. "[T]he mere fact that counsel failed to recognize the factual or

**32.** As the magistrate judge pointed out, the second degree murder statute at the time of Andrews' trial listed robbery, but not aggravated robbery, among the enumerated felonies. The first degree murder statute similarly omitted a reference to aggravated robbery in its provision relating to murder occurring during the course of enumerated felonies. Andrews and Selby were charged with aggravated robbery. In 1975, the statutes in question were amended to include aggravated robbery. While the magistrate judge noted, in *dicta,* that technically, this circumstance might cast doubt upon the availability of a second degree murder instruction in

Andrews' case, neither party argues it, and we do not address it.

**33.** While we are not suggesting that counsel should routinely or cavalierly question decisions from a state's highest court, the fact that *Norton* was so clearly overruled three years after its decision, and the fact that the *Norton* interpretation of the statutory language seems so patently erroneous, suggest that the *Norton* interpretation was susceptible to challenge even between 1983 and 1986.

legal basis for a claim ... does not constitute cause for a procedural default." *Murray v. Carrier,* 477 U.S. 478, 486–87, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986). Andrews has failed to show cause for not raising earlier his lesser included offense claim, as well as any arguments relating to the ineffectiveness of his counsel in failing to seek an instruction on it.[34]

2. Evidentiary Hearing on Cause.

 Andrews argues the magistrate judge and district court erred in failing to conduct an evidentiary hearing on cause for his failure to raise these arguments earlier. We find no error.

While Andrews correctly points out that many cases have recognized the "appropriateness" of evidentiary hearings in certain situations, those cases impose no *requirement* of a hearing in the circumstances of this case. Further, in its recent *McCleskey* decision, the Supreme Court specifically stated, "[t]he petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a matter of law that petitioner cannot satisfy the standard." *McCleskey v. Zant,* 111 S.Ct. at 1470; *see also Murray v. Carrier,* 477 U.S. at 487, 106 S.Ct. at 2645 (Court rejected rule which would require federal courts to "routinely ... hold evidentiary hearings to determine what prompted counsel's failure to raise the claim in question"); *cf. Smith v. Jones,* 923 F.2d 588, 590 (8th Cir.1991) (evidentiary hearing not required where ineffective assistance of counsel claim can be resolved on record); *Bassette v. Thompson,* 915 F.2d 932, 940–41 (4th Cir.1990) ("no hearing is required if the facts alleged by the petition and assumed to be true are insufficient to support a claim"), *cert. denied,* — U.S. —, 111 S.Ct. 1639, 113 L.Ed.2d 734 (1991). The record in this case, including affidavits from Caine, Ford and other attorneys involved in the case, makes it clear as a matter of law that Andrews will be unable to satisfy the cause and prejudice standard. Even were we to assume that Caine and others would testify at an evidentiary hearing in accordance with their affidavits and with assertions made in Andrews' briefs, that would not change the conclusion we reach today.[35] An evidentiary hearing would add nothing to our inquiry. *See Townsend v. Sain,* 372

---

**34.** To the extent that Andrews' argument regarding his counsel's ineffectiveness in failing to distinguish his culpability from Selby's is distinct from the failure to give the lesser included offense instruction, Andrews has clearly failed to show cause for not raising the culpability issue earlier. Any alleged inadequacies in Caine's trial representation and in his representation on direct appeal have been available as a matter of trial record since 1974. To the extent this issue is bound up with the lesser included offense argument (i.e., any prejudice attributable to the failure to differentiate the culpability of the two defendants was only manifest because of the failure to give the jury the option to convict Andrews of second degree murder in accordance with his lesser culpability), it rises or falls with our analysis of that argument.

**35.** Caine's affidavit states as follows:

At the trial, the main theory of Mr. Andrews' defense was that, although he had been involved in the underlying robbery, he was not involved in the killings of any of the victims. He had, in fact, withdrawn from the premises before Pierre began shooting the victims, and he did not intend that the killings take place. In connection with Mr. Andrews' defense, I took exception to the trial court's refusal to instruct the jury on the lesser included offense of second degree murder. I did not make any tactical decision to withhold the lesser included offense of second degree murder from the jury, and affirmatively objected to the court's refusal to submit that lesser included offense. My arguments to the jury did not discuss the alternative of second degree murder, because the jury was not instructed on that alternative. My arguments to the jury were necessarily directed by the instructions the court had given the jury, not other instructions that I had asked the court to give but which were not.

At no time in the course of representing Mr. Andrews did I deliberately withhold any legal issue in order to obtain a tactical advantage by raising it later. At no time did Mr. Andrews authorize me to withhold any legal issue or argument on his behalf in order to obtain a tactical advantage by raising it later, and I never requested any such authority. Appendix to Brief of Petitioner/Appellant at 50–51. At trial, Selby's attorney asked for a series of lesser included offense instructions, although not under the particular section of the second degree murder statute upon which Andrews now relies. Caine joined in Selby's exceptions to the failure to give those lesser included offense instructions.

U.S. 293, 312, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963).

### 3. Fundamental Miscarriage of Justice.

 Even though he has failed to establish cause, Andrews may still have his remaining claims considered if he can show that the failure to consider them would result in a "fundamental miscarriage of justice." *See McCleskey v. Zant*, 111 S.Ct. at 1471; *Murray v. Carrier*, 477 U.S. at 495–96, 106 S.Ct. at 2649–50. As we have indicated, this is a very narrow exception to procedural bar and to a finding of abuse of the writ. It applies only in "extraordinary" cases to one "innocent of the crime" for which he has been convicted. *McCleskey v. Zant*, 111 S.Ct. at 1471; *see also Murray v. Carrier*, 477 U.S. at 495–96, 106 S.Ct. at 2649–50 ("actually innocent"); *Dugger v. Adams*, 489 U.S. at 412 n. 6, 109 S.Ct. at 1218 n. 6.

 In this case, there is no question of Andrews' participation in the crimes of which he was convicted. His argument is that his counsel's ineffectiveness caused him to be erroneously convicted of first degree murder and therefore eligible for the death penalty. He argues he is "actually innocent" of first degree murder. We disagree.

Many courts, including our own both in his first federal habeas petition and in his current habeas petition, have carefully reviewed the record in this case and concluded that the evidence supports the conviction for first degree murder and the imposition of the death penalty. No fundamental miscarriage of justice, as the Supreme Court has narrowly defined that term, will result from our failure to consider issues which Andrews failed to raise earlier.

Our determination that Andrews' remaining claims are abusive could end our consideration of·this case.[36] However, these claims are susceptible to dismissal for additional reasons, which we now explain, as alternative holdings, in the hope that our thorough treatment of them will finally put an end to this lengthy challenge to the validity of the state court's judgment.

### C. *Nonretroactivity of Beck Claim.*

 Andrews' claim of constitutional error arising from the failure to give the second degree murder instruction is based upon *Beck* which, as we have noted, for the first time made clear the constitutional basis for the entitlement to a lesser included

---

**36.** In *McCleskey v. Zant*, ── U.S. ──, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), the Court characterized the abuse of the writ inquiry as a "threshold" matter. In *Teague v. Lane*, 489 U.S. 288, 300, 109 S.Ct. 1060, 1069, 103 L.Ed.2d 334 (1989), however, and subsequently in *Penry v. Lynaugh*, 492 U.S. 302, 313, 109 S.Ct. 2934, 2943–44, 106 L.Ed.2d 256 (1989), the Court characterized the retroactivity analysis set forth in *Teague* as a "threshold" question. *See also Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). The Court has not specifically addressed the question of priority when a *Teague* retroactivity question is presented along with claims of procedural bar and/or abuse of the writ, all of which are presented in this case. Those few lower court which have addressed the issue have reached different conclusions. *See, e.g., Johnson v. Singletary*, 938 F.2d 1166 (11th Cir.1991) (while noting that, as a "general proposition," it is proper to analyze abuse of the writ before addressing procedural default, in that particular case the court addressed procedural default first); *Smith v. Black*, 904 F.2d 950, 982 (5th Cir.1990) (after surveying cases, court concludes "our best reading of the Supreme Court's intimations on the priority of

*Teague* issues leads us to conclude that the better practice is to engage first in an analysis of the 'newness' of [petitioner's] requested rule"); *Clark v. Dugger*, 901 F.2d 908, 910 (11th Cir.) (court questioned whether previous opinion of plurality of en banc court holding that court should first address abuse of the writ and then address *Teague* retroactivity survives *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)), *overruled on other grounds, Sawyer v. Smith*, ── U.S. ──, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990); *United States v. Makaweo*, 730 F.Supp. 1016, 1016–17 (D.Haw.1990) (court considered waiver before *Teague* retroactivity). As the Fifth Circuit noted in *Smith*, the Supreme Court itself, in *Butler v. McKellar*, 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990), addressed only the *Teague* issue although the state had also argued that the petitioner's identical claim was procedurally barred. *Smith v. Black*, 904 F.2d at 982. *See* Brief of Respondents, *Butler v. McKellar*; Reply Brief For Petitioners, *Butler v. McKellar*.

Because of our decision in this case to address all of the issues presented, we need not determine the order in which such issues should be addressed.

offense instruction. The magistrate judge and district court held this claim barred by *Teague*'s nonretroactivity doctrine. We agree.

In *Teague*, a plurality of the Court held that new rules would not be applied to cases on collateral review unless they fall within one of two exceptions. *Teague v. Lane*, 489 U.S. 288, 305–10, 109 S.Ct. 1060, 1072–75, 103 L.Ed.2d 334 (1989). A majority of the Court embraced the *Teague* doctrine in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), and held it applicable to capital, as well as noncapital, cases. Thus, if *Beck* established a new rule, it is inapplicable to Andrews' case since his conviction became final in 1978, two years before *Beck* was decided. Andrews concedes that *Beck* established a "new rule" within the meaning of *Teague* and subsequent cases.[37] The magistrate judge and district court so held. We affirm that conclusion.

Andrews argues, however, that the new rule established in *Beck* falls within the second exception to *Teague*, as a rule which "alter[s] our understanding of the *bedrock procedural elements* that must be found to vitiate the fairness of a particular conviction." *Teague v. Lane*, 489 U.S. at 311, 109 S.Ct. at 1076 (emphasis in original) (quoting *Mackey v. United States*, 401 U.S. 667, 693, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971)). We disagree.

The Supreme Court has characterized the two exceptions to the nonretroactivity of new rules as "narrow" ones. *Butler v. McKellar*, 494 U.S. at ——, 110 S.Ct. at 1219; *Saffle v. Parks*, 494 U.S. at ——, 110 S.Ct. at 1260. The second exception applies to "watershed rules of criminal procedure," or rules which are " 'implicit in the concept of ordered liberty.' " *Teague v. Lane*, 489 U.S. at 311, 109 S.Ct. at 1075 (quoting *Mackey v. United States*, 401 U.S. 667, 693, 91 S.Ct. 1160, 1180). The Court has further defined the second exception as referring to "those new procedures without which the likelihood of an accurate conviction is seriously diminished," *id.* at 313, 109 S.Ct. at 1076–77, or which implicate "the fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks*, 494 U.S. at ——, 110 S.Ct. at 1263. The narrowness of this exception is illustrated by the following language from *Parks:*

> Although the precise contours of this exception may be difficult to discern, we have usually cited *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), holding that a defendant has the right to be represented by counsel in all criminal trials for serious offenses, to illustrate the type of rule coming within the exception.

*Id.* 110 S.Ct. at 1264; *see also Sawyer v. Smith*, —— U.S. ——, 110 S.Ct. 2822, 2824, 111 L.Ed.2d 193 (1990) (Court recognized that while "almost all Eighth Amendment jurisprudence concerning capital sentencing is directed toward the enhancement of reliability or accuracy in some sense," the second exception is reserved only for rules "essential to the fairness of the proceeding"). The rule Andrews seeks to have applied to his case—that *Beck* mandates the giving of a lesser included offense instruction even in the absence of a request for such an instruction by the defendant— is not such a "watershed" rule as to fit within the second exception. Accordingly, Andrews' *Beck* claim must be rejected.[38] We turn, therefore, to further consideration of Andrews' ineffectiveness claims and

---

37. A new rule is one which "breaks new ground or imposes a new obligation on the States or the Federal Government," or which "was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. at 301, 109 S.Ct. at 1070 (emphasis in original); *see also Saffle v. Parks*, 494 U.S. at ——, 110 S.Ct. at 1260.

38. The dissent agrees with our conclusion that *Beck* is unavailable to Andrews under the nonretroactivity doctrine of *Teague v. Lane*. Thus, the point of the dissent's quarrel with our analysis of writ abuse and the lesser included offense issue, diss. op. at 1201–1202, is unclear. If *Beck* indeed has no application to Andrews' case, as the dissent concedes, then any alleged unfairness in his inability to raise the matter until *after* his first federal petition was filed is irrelevant. As we have pointed out, Andrews' claim of ineffectiveness stemming from his asserted entitlement to a second degree murder instruction under *state* law *was* available to him at the time he filed his first federal petition.

to the district court's conclusion that Andrews' procedural default of those claims in state court makes them unavailable to him now.

### D. *Procedural Default of Ineffectiveness Claims.*

We agree with the district court that the Utah Supreme Court's invocation of procedural bar to preclude consideration of Andrews' ineffectiveness claims in *Andrews VI* could not have been clearer. The court stated, "[w]e do not reach the merits of the petition." *Andrews VI*, 773 P.2d at 833. It then expressly held his claims barred under Utah R.Civ.P. 65B(i) which prohibits raising alleged constitutional violations in "subsequent" postconviction proceedings absent a showing of "good cause." *Id.*[39] We must infer from that clear statement a refusal to reach the merits of all issues presented to it, including Andrews' ineffectiveness claims.

Under the procedural default rule developed in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and subsequent cases:

> where a state court finding of procedural default is an adequate and independent state ground, the procedural default bars federal habeas review of the claims unless the petitioner can demonstrate "cause" for his procedural default and "prejudice attributable thereto," or that the failure to consider the federal claim will result in a "fundamental miscarriage of justice."

**39.** Utah R.Civ.P. 65B(i)(4) provides as follows:

> All claims of the denial of any of complainant's constitutional rights shall be raised in the postconviction proceeding brought under this rule and may not be raised in another subsequent proceeding except for good cause shown therein.

The Utah Supreme Court held that Andrews had failed to show "good cause" as to "why the claims he now makes were not raised on direct appeal or in prior postconviction proceedings." *Andrews VI*, 773 P.2d at 833. The court went on to note:

> We are in accord with decisions of federal courts which hold that raising issues in a petition that were not but could have been raised in a previous petition, except where good cause is shown, constitutes an abuse of the writ and requires dismissal of the petition. *Id.* at 833–34.

*Shafer v. Stratton*, 906 F.2d 506, 508 (10th Cir.1990) (quoting *Murray v. Carrier*, 477 U.S. at 485, 106 S.Ct. at 2643–44); *see also Dugger v. Adams*, 489 U.S. at 411–12 n. 6, 109 S.Ct. at 1217–18 n. 6. *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), adopted the "plain statement" rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), for ambiguous state court references to procedural bar. Thus, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. at 263, 109 S.Ct. at 1043 (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327, 105 S.Ct. 2633, 2638–39, 86 L.Ed.2d 231 (1985)). However, as the Supreme Court made clear in *Coleman v. Thompson*, —— U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), this presumption that a state court decision relies on federal grounds in the absence of a clear statement to the contrary only arises if "the decision of the last state court to which the petitioner presented his federal claims ... fairly appear[s] to rest primarily on federal law or to be interwoven with federal law." *Id.* 111 S.Ct. at 2557.

As we reiterated in *Shafer*, that state court finding must be an "adequate and independent state ground."[40] *Shafer v. Stratton*, 906 F.2d at 508.

**40.** A state court finding of procedural default is adequate if it is "strictly or regularly followed." *Hathorn v. Lovorn*, 457 U.S. 255, 263, 102 S.Ct. 2421, 2426–27, 72 L.Ed.2d 824 (1982). Thus, the procedural rules must be applied "evenhandedly to all similar claims." *Id. see Ford v. Georgia*, —— U.S. ——, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991); *Dugger v. Adams*, 489 U.S. at 411 n. 6, 109 S.Ct. at 1217 n. 6; *Gutierrez v. Moriarty*, 922 F.2d 1464, 1471 (10th Cir.1991); *Osborn v. Shillinger*, 861 F.2d 612, 616–21 (10th Cir.1988). A state court finding of procedural default is independent if it is separate and distinct from federal law. *See Ake v. Oklahoma*, 470 U.S. 68, 75, 105 S.Ct. 1087, 1092, 84 L.Ed.2d 53 (1985) ("when resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law"); *cf. Coleman v. Thompson*, —— U.S. ——, 111 S.Ct. 2546, 2560, 115 L.Ed.2d 640 (1991) ("*Ake* was a direct re-

Accordingly, given the Utah Supreme Court's clear reliance on procedural bar, if that court's holding of procedural bar constitutes an adequate and independent state ground, and if Andrews fails to demonstrate cause for his procedural default and prejudice therefrom, or a fundamental miscarriage of justice, this court will not reach the merits of the claims so barred. *See Coleman v. Thompson,* — U.S. —, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. at 255, 109 S.Ct. at 1038–39; *Dugger v. Adams,* 489 U.S. at 401, 109 S.Ct. at 1211–12; *Murray v. Carrier,* 477 U.S. at 487, 106 S.Ct. at 2644–45; *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497.[41]

### 1. Adequate and Independent State Ground.

Andrews argues the Utah Supreme Court has failed to consistently apply the procedural bar rule it applied in *Andrews VI,* with the result that the court's finding of procedural default is not an "adequate" state ground.[42] He asserts that procedural default is always excused in Utah and that the Utah courts have not consistently applied Utah R.Civ.P. 65B(i), the rule the Utah Supreme Court relied upon to hold

Andrews' claims barred in *Andrews VI.*[43] Thus, he argues it cannot be an "adequate" state ground for the court's decision in *Andrews VI.*

As indicated previously, Utah R.Civ.P. 65B(i)(4) prohibits raising an alleged denial of constitutional rights in "another subsequent [postconviction] proceeding" except upon a showing of "good cause." The Utah Supreme Court has defined "good cause" as follows:

(1) the denial of a constitutional right pursuant to new law that is, or might be, retroactive, (2) new facts not previously known which would show the denial of a constitutional right or might change the outcome of the trial, (3) the existence of fundamental unfairness in a conviction, (4) the illegality of a sentence, or (5) a claim overlooked in good faith with no intent to delay or abuse the writ. Frivolous claims, once-litigated claims with no showing of "unusual circumstances" or "good cause," and claims that are withheld for tactical reasons should be summarily denied.

*Hurst v. Cook,* 777 P.2d 1029, 1037 (Utah 1989) (citations omitted) (footnote omit-

---

view case. We have never applied its rule regarding independent state grounds in federal habeas.").

**41.** Andrews also argues alternatively that the deliberate by-pass standard of *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), should apply to Andrews' claims, not the *Wainwright v. Sykes* cause and prejudice test. This argument has been eliminated by the Supreme Court's recent decision in *Coleman v. Thompson,* — U.S. —, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

**42.** The focus of Andrews' challenge to Utah's procedural default rules is on the adequacy of those rules, not their independence from federal law. We accordingly do not address their independence.

**43.** In support of his claim that the Utah Supreme Court routinely disregards procedural default, he cites our decision in *Parks v. Brown,* 860 F.2d 1545 (10th Cir.1988) (en banc), *rev'd on other grounds,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), for the proposition that "a state court's policy of reviewing for 'fundamental prejudice,' regardless of the failure to timely

raise an issue, removed any bar to consideration of that issue in federal habeas corpus." Brief of Petitioner/Appellant at 43. In *Parks* we stated:

Although petitioner's trial counsel did not raise these issues as objections at trial, we nevertheless may consider them because the Oklahoma Court of Criminal Appeals reviewed them on direct appeal.... Although the prosecutor's remarks were only reviewed for "fundamental prejudice," that constitutes a sufficient decision on the merits by the state court. *See Morishita v. Morris,* 702 F.2d 207, 209 (10th Cir.1983) (review for "fundamental fairness" by state court was a decision on the merits).

*Parks v. Brown,* 860 F.2d at 1548 n. 2. *Parks* presented a different situation from that presented in this case. In *Parks,* the state court actually reviewed the remarks in question for fundamental prejudice. Here, by contrast, the Utah Supreme Court, in reliance upon its statutory procedural default rule, expressly declined to reach the merits. *Parks* does not stand for the proposition that a mere *policy* of reviewing for fundamental prejudice means that state rules of procedural default will never be given credence in federal court. *See also Harris v. Reed,* 489 U.S. at 260–62, 109 S.Ct. at 1041–43.

ted).[44]

The magistrate judge and district court held that Utah's procedural default rule has been "consistently, evenly and *objectively* applied." Report and Recommendation at 84, R.Vol. I Tab 33 (emphasis original). We agree.

We first note that an allegedly uneven application of state procedural default rules *in general* does not necessarily establish that the application of a procedural default rule in a particular case is not "adequate." In *Dugger v. Adams*, 489 U.S. 401, 410–12 n. 6, 109 S.Ct. 1211, 1216–18 n. 6, 103 L.Ed.2d 435 (1989), the Supreme Court considered the adequacy of Florida's procedural default rule by reviewing the Florida courts' prior applications of that rule to the other cases addressing the identical claim presented in *Adams* (i.e., whether remarks to the jury violated *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)), and concluded that in the "vast majority of cases" the rule had been applied consistently. *See Hathorn v. Lovorn*, 457 U.S. 255, 263, 102 S.Ct. 2421, 2426–27, 72 L.Ed.2d 824 (1982) (adequacy requires application of rule "evenhandedly to all *similar* claims") (emphasis added); *Gutierrez v. Moriarty*, 922 F.2d 1464, 1469–71 (10th Cir.1991) (in considering the adequacy of New Mexico's procedural default rules, this court considered their application only to the same issues that were raised in the case before it). The Court further specifically stated in *Adams* that "the few cases that respon-

dent and the dissent cite as ignoring procedural defaults do not convince us that the Florida Supreme Court fails to apply its procedural rule regularly and consistently." *Dugger v. Adams*, 489 U.S. at 411 n. 6, 109 S.Ct. at 1217 n. 6. Thus, it appears that the Supreme Court will tolerate an "occasional act of grace," even in a capital case. *Cf. Bass v. Estelle*, 705 F.2d 121, 122–23 (5th Cir.), *cert. denied*, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983). The test then is whether the Utah courts' actual application of the particular procedural default rule to all "similar" claims has been evenhanded "in the vast majority" of cases.

The claims which the Utah court held procedurally barred are Andrews' two-part ineffectiveness claim and his claim regarding the lesser included offense instruction on second degree murder. We have already rejected his separate claim regarding the failure to give the lesser included offense instruction. We consider, therefore, the adequacy of the Utah court's treatment of his ineffectiveness claims.

There are a number of cases involving the potential application of procedural bar to claims of ineffective assistance of counsel. Andrews relies in particular upon three recent cases, which, he argues, demonstrate that the Utah courts do not routinely invoke procedural bar in the face of such claims.

Andrews argues that in *Fernandez v. Cook*, 783 P.2d 547 (Utah 1989), *Jensen v.*

---

**44.** The reference to "unusual circumstances" is a reference to a well-developed body of Utah habeas corpus law, pursuant to which:

[W]hile habeas corpus is not a substitute for appeal, a conviction may nevertheless be challenged by collateral attack in "unusual circumstances," that is, where an obvious injustice or a substantial and prejudicial denial of a constitutional right has occurred, irrespective of whether an appeal has been taken. *Hurst v. Cook*, 777 P.2d at 1035. *See also Brown v. Turner*, 440 P.2d 968, 969 (Utah 1968) (court noted that habeas corpus is available for alleged errors which were known or should have been known to a party at the time judgment was entered only in an "unusual circumstance," such as "when the court had no jurisdiction over the person or the offense, or where the requirements of law have been so disregarded that the

party is substantially and effectively denied due process of law, or where some such fact is shown that it would be unconscionable not to re-examine the conviction").

The terms "good cause" and "unusual circumstances" have often been used interchangeably, and appear to have the same essential meaning. *See generally Hurst v. Cook*, 777 P.2d at 1029. However, in a very recent opinion, two Utah Supreme Court justices suggested that the "good cause" requirement may have narrower application than the "unusual circumstance" exception to procedural bar. *Dunn v. Cook*, 791 P.2d 873, 878–79 (Utah 1990); *see also id.* at 879 (Zimmerman, J., concurring). Never has a majority of the court, however, distinguished clearly between "good cause" and "unusual circumstances."

*Deland,* 795 P.2d 619 (Utah 1989), and *Dunn v. Cook,* 791 P.2d 873 (Utah 1990), "the Utah Supreme Court has granted relief, or considered the merits of a petition, under circumstances indistinguishable from those presented by [Andrews'] 1987 application to that court." Petitioner's Memorandum in Response to Order of June 8, 1990, and in Support of Motions Respecting *De Novo* Review at 17. We disagree.

In *Fernandez,* the defendant was convicted and sentenced. On direct appeal, represented by the same attorney who represented him at trial, he challenged only his sentence. His sentence was vacated and he was resentenced. The defendant then filed a *pro se* appeal from the new sentencing order. He subsequently obtained counsel, who stipulated to a voluntary dismissal of the appeal and, two months later, filed a petition for habeas corpus, alleging, *inter alia,* ineffective assistance of counsel. The Utah Supreme Court reversed the district court's dismissal of his petition, holding that "because his trial counsel was also his counsel on direct appeal, Fernandez is not barred from using habeas corpus to raise the ineffective assistance of counsel claim." *Fernandez v. Cook,* 783 P.2d at 550.

*Fernandez* is clearly distinguishable from Andrews' case. In *Fernandez,* the defendant raised the ineffectiveness of his trial and appellate counsel in his *first* habeas proceeding. By contrast, Andrews raised it in his third state habeas proceeding. While his allegedly ineffective counsel represented him in his direct appeal, just as in *Fernandez,* Andrews' subse-

quent counsel became involved in his case during his first state habeas proceeding. Additionally, and unlike the defendant in *Fernandez,* Andrews filed another state court postconviction petition proceeding in which he failed to raise the issue, before he finally raised it in his third such petition, some ten years after his direct appeal was dismissed. *Fernandez* says nothing about the propriety of reaching the merits of such a claim when presented in the procedural posture that Andrews has. *See Dunn v. Cook,* 791 P.2d at 873.

*Jensen* and *Dunn* are similarly distinguishable.[45] Thus, the Utah Supreme Court's application of procedural bar to Andrews' claim of ineffective assistance of counsel in *Andrews VI,* and its refusal to apply a similar bar to ineffectiveness claims in *Fernandez, Jensen,* and *Dunn,* does not demonstrate that the Utah courts apply procedural bar inconsistently or unevenly to similar claims.

■ Finally, Andrews suggests that there is some inconsistency or irregularity in the Utah Supreme Court's treatment of Andrews' own two most recent petitions before that court. As indicated, the court held Andrews' claims procedurally barred in *Andrews VI* because no "good cause" was shown, but reached the merits of the two claims in his subsequent petition in *Andrews VII,* finding he had established good cause. In *Andrews VI,* the court did not explain its reasons for finding that Andrews failed to establish good cause, but obviously the court rejected Andrews' explanation for his failure to raise his claims

---

**45.** In *Jensen,* the defendant directly appealed his conviction, but failed to raise the issue of ineffective assistance of trial counsel. Unlike in *Fernandez,* he had been represented by different attorneys at trial and on appeal. However, his appellate attorney advised the defendant that his ineffectiveness claim could not properly be raised then, and the Utah Supreme Court found that that was the "sole" reason for the defendant's failure to raise the claim on appeal. Thus, as in *Fernandez,* the court concluded that it was appropriate to raise the issue in his first habeas petition.

Finally, *Dunn,* like *Fernandez,* involved the failure to raise on direct appeal an ineffective assistance of counsel claim. The same attorney represented the defendant at trial and on ap-

peal. The Utah Supreme Court relied on *Fernandez* to conclude that the failure to raise the issue on direct appeal was no bar to raising it in his first habeas petition.

The dissent argues that "the firmly established and regularly followed state practice appears to be that a defendant is excused from raising an ineffective assistance of counsel claim until a subsequent proceeding in which the defendant has retained new counsel." Diss. op. at 1200. But, as we have noted, Andrews *was* represented by new counsel, in addition to his original trial counsel, in his first state collateral proceeding. Additionally, new counsel represented him throughout every subsequent proceeding. There is therefore no inconsistency in the Utah Supreme Court's treatment of Andrews' case.

earlier. Thus, the court implicitly rejected the argument that Andrews established good cause for failing to raise the lesser included offense instruction issue because the federal and state court decisions on which the claim was based had not been decided and were not reasonably foreseeable and because his trial and appellate counsel, Caine, was ineffective. By contrast, Andrews' argument for failing to raise the juror exclusion issue and the false testimony issue before he raised those issues in *Andrews VII* was that they were based on newly discovered evidence. The Utah Supreme Court evidently concluded that explanation fell within its definition of good cause in *Hurst v. Cook*, 777 P.2d at 1037 ("good cause ... may be established by showing ... new facts not previously known which would show the denial of a constitutional right or might change the outcome of the trial"). We, therefore, see no inconsistency between the Utah Supreme Court's treatment of Andrews' claims in *Andrews VI* and *Andrews VII.*

Andrews also argues that in his two post-conviction appeals the Utah Supreme Court applied a federal cause and prejudice standard to procedural defaults, whereas in other cases the court expressly refused to apply such a federal standard to questions of default in state habeas petitions. We disagree. In those two decisions the Utah Supreme Court applied its own procedural default rules, while noting the similarity between those rules and federal procedural default rules.

Andrews' last claim of inconsistency in the way his case has been treated by the Utah Supreme Court focuses on the court's motives for refusing to reach the merits of his claims. He argues the court "departed from its past practice of reaching the merits of all capital cases ... for the explicit purpose of cutting off [Andrews'] right to federal review. Brief of Petitioner/Appellant at 35–36. We disagree with this analysis of the Utah Supreme Court's treatment of Andrews' case. The court has done nothing more than apply its well-established rules regarding procedural bar. Under *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), such applica-

tion can indeed have the effect of foreclosing federal review of the merits of a petitioner's claims, even valid ones, but that foreclosure presents no constitutional error.

We therefore affirm the conclusion that the Utah Supreme Court relied upon an adequate and independent state ground when it refused to reach the merits of Andrews' claims in *Andrews VI.* Thus, those claims are procedurally barred in this court unless Andrews shows cause for his default in state court and prejudice therefrom. We turn therefore to Andrews' arguments relating to cause and prejudice.

### 2. Cause and Prejudice.

■ We have already discussed Andrews' arguments relating to cause in the context of our abuse of the writ analysis. He has argued that he defaulted on his ineffectiveness claims in state court because Caine remained as his counsel on appeal and in the first collateral proceeding, and Caine would hardly be expected to raise his own ineffectiveness, and because of the alleged confusion surrounding the law, both federal and state, of lesser included offenses. We have rejected already his argument that any confusion in the law regarding lesser included offenses can be cause excusing his failure to argue his ineffectiveness claims in his first federal habeas petition. For the same reasons, we reject that argument as cause for his state procedural default.

■ More problematic is the question of whether Caine's continued involvement as co-counsel in the first collateral proceeding should excuse his procedural default. As the magistrate judge and district court acknowledged, ineffectiveness claims may appropriately be raised for the first time in collateral proceedings. We noted in *Osborn v. Shillinger*, 861 F.2d 612, 623 (10th Cir.1988):

Where, as here, an ineffectiveness claim cannot be made on the basis of the record and the allegedly ineffective counsel handled both the trial level proceedings and the direct appeal, a petitioner

may raise an ineffective assistance of counsel claim for the first time collaterally.

*See also Kimmelman v. Morrison,* 477 U.S. 365, 378, 106 S.Ct. 2574, 2584, 91 L.Ed.2d 305 (1986) ("collateral review will frequently be the only means through which an accused can effectuate the right to counsel"); *Beaulieu v. United States,* 930 F.2d 805, 806 (10th Cir.1991) ("preferred avenue for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack under 28 U.S.C. § 2255").[46]

■ While we recognize the difficulties facing Ford when he initially entered an appearance on Andrews' behalf, during Andrews' first state collateral proceeding, we also are acutely aware of the fact that Ford *was* Andrews' attorney at that point, with an obligation to represent him vigorously and raise all possible issues, including Caine's ineffectiveness and the failure to give the second degree murder instruction which was available under Utah law. We therefore disagree with the dissent's view, diss. op. at n. 2, that the circumstances surrounding Ford's entrance into the case made it impossible for him to assert those claims. To the extent Ford's failure to raise those issues was the result of his own ignorance or inadvertence in that first collateral proceeding, as Ford suggested in oral argument before this court, any argument based on that fact is completely foreclosed by *Coleman v. Thompson,* — U.S. ——, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991) ("[a]ttorney ignorance or inadvertence is not 'cause' ").

■ Furthermore, the question here is whether there is cause for having failed to raise these ineffectiveness claims until the *third* state collateral proceeding. Even were we to agree, which we do not, that the circumstances of Ford's initial entry into this case rendered it practically impos-

sible to argue Caine's ineffectiveness in the first collateral proceeding, there is no cause for having failed to raise it until 1987, nine years later. Those claims are accordingly procedurally barred in this court.

3. Fundamental Miscarriage of Justice.

Even though Andrews has failed to establish cause for and prejudice from his state procedural default, he argues his procedurally barred claims must nonetheless be addressed on their merits because the failure to consider those claims will result in a "fundamental miscarriage of justice." *Murray v. Carrier,* 477 U.S. 478, 495–96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). We have already rejected this argument. We now turn finally, and alternatively, to the merits of Andrews' ineffectiveness claims.

E. *Merits of Ineffectiveness Claims.*

Were we to assume cause and prejudice and reach the merits of Andrews' ineffectiveness claims, we would reject them. "The two-part test set forth by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), most recently construed by this court in *United States v. Rivera,* 900 F.2d 1462, 1472 (10th Cir.1990), states that the appellant must show *both* that his attorney's performance fell below an objective standard of reasonableness and that, but for the counsel's inadequacies, the result of the proceedings would have been different." *Tapia v. Tansy,* 926 F.2d 1554, 1564 (10th Cir.1991); *see also United States v. Treff,* 924 F.2d 975, 979–80 (10th Cir.1991); *Osborn v. Shillinger,* 861 F.2d 612, 625–26 (10th Cir.1988). Andrews fails to meet either part of the *Strickland* test.

■ We have carefully reviewed all twenty-three volumes of trial transcript in this case, and conclude that Caine's repre-

---

**46.** Utah law does not prohibit the presentation of an ineffectiveness claim on direct appeal, although the courts recognize that in certain circumstances that may be practically impossible and the first collateral proceeding will be the appropriate forum for challenging the trial attorney's effectiveness. *See, e.g., Jensen v. De-*

*land,* 795 P.2d 619, 621 (Utah 1989). Thus, the importance the Supreme Court has placed on the first collateral proceeding in *Coleman v. Thompson,* — U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), becomes even more relevant.

sentation of Andrews was *well within* the range of competent and acceptable defense counsel performance. Beginning with the preliminary hearing, proceeding through the voir dire of prospective jurors, and continuing throughout the trial, Caine pursued his chosen strategy of differentiating Andrews' involvement from Selby's.[47] We disagree with Andrews' assertions now that Caine's performance in pursuing that strategy fell below that of a reasonably competent attorney. In reaching this conclusion, we note that "[r]eviewing courts should avoid hindsight and second-guessing, and extend deference to counsel's tacti-

cal judgments." *Osborn v. Shillinger,* 861 F.2d at 625 (citing *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065).

▮▮▮▮▮ Andrews particularly challenges Caine's effectiveness in cross-examining the state's chief witness, Orren Walker, and George Platco, Jr., and he argues Caine's brief in Andrews' direct appeal demonstrates his ineffectiveness. We reject his argument that there were significant discrepancies between Walker's preliminary hearing testimony and his trial testimony, which Caine failed to elicit at trial.[48] Furthermore, we have carefully re-

---

**47.** In arguing against having Andrews bound over to stand trial, Caine stated:

> I think the Court needs to look first at Section 76–2–202 of the Revised Criminal Code when it defines what a party to an offense is, and in essence that's all that the County's evidence at this point has established, the evidence has not established that Mr. Andrews in any way was the active perpetrator of any of the acts included here. In fact the evidence has established that at one point from the eye witness he had a change of heart and left.
>
> The evidence has not established in any he was connected with the robbery. We have no connection there. We have no connection with a rape under those circumstances. We have no connection with the actual perpetration.

PH at 177–78. A little later, he argued:

> [Y]ou have to examine all the facts of the case, but let's examine all the facts of the case and not the ones which Mr. Newey has conveniently left out. When there was a discussion as to whether the defendant made the statement "I am scared," you also recall that Mr. Walker said very clearly, he said "I can't do it," and that this was not three or four hours down the road, this was before the liquid, testified to, was ever administered. And then Mr. Walker very clearly indicated that Andrews did not participate. He didn't say maybe he was there, or maybe because of the other gun he was there. He very clearly in my recross-examination indicated Andrews was gone. Andrews was gone. That's his statement. And the statement was made "I can't do it" before the liquid was ever poured.

*Id.* at 181. Still later in the preliminary hearing, when Selby's attorneys expressed concern about Caine having allegedly discussed evidence with news reporters, Caine responded:

> I made no comment on what the evidence means. I did not misquote any of the evidence. I merely stated what had been said. As to whether it is better for my client than Mr. Pierre, as I have indicated to this court on numerous occasions, and I think it is coming down to that, and the evidence already that is out indicates that we have different positions.

*Id.* at 187. In arguments relating to Andrews' motion to sever his trial from that of his co-defendants, Caine argued:

> I have essentially laid myself open here in this affidavit to the state in indicating one of the possible defenses that we may use and that is the defense of withdrawal from this action before any of these things took place, by Mr. Andrews.

PT–1 at 25. In asking the court to reconsider its denial of his severance motion, Caine specifically indicated that he planned to "place the entire culpability of this offense on him [Selby]." *Id.* at 100. At numerous other places in the preliminary proceedings, Caine indicated the specific strategy he would pursue—i.e., differentiating Andrews' involvement from Selby's.

Similarly, during voir dire Caine asked a number of prospective jurors whether they would be able to differentiate between the evidence presented as to the three defendants.

Finally, Caine pursued that strategy throughout the trial, cross-examining witnesses where evidence related to Andrews and attempting to differentiate Andrews' actions from Selby's. After the state presented its case, Caine moved to dismiss the charges against Andrews, arguing that "Mr. Walker's testimony, I believe is quite clear that Mr. Andrews did not actually cause the death of any individual. As to his other activities, that is still questionable, but he did not cause their death." T–18 at 3274.

**48.** For example, Andrews asserts that "Orren Walker's preliminary hearing testimony—which Mr. Andrews' lawyer did not bring out at trial— showed that, in fact, it was Pierre [Selby] who tied up both Mr. Walker, and Carol Naisbitt...." Brief of Petitioner/Appellant at 16. In fact, it was brought out on direct examination of Orren Walker that Selby had in fact tied up Walker, T–17 at 3079–80, and Caine elicited on cross-examination that Selby had also tied up Mrs. Naisbitt, T–18 at 3180. Similarly, Andrews argues that Caine failed to bring out at trial conflicting testimony as to whether Andrews was ever seen actually pouring the Drano which

viewed Caine's cross-examination of Platco, and conclude that Caine effectively endeavored to cast doubt upon Platco's credibility. The fact that he could have attempted to discredit Platco's testimony through additional, or alternative, means, does not indicate that his examination of Platco was ineffective.[49] Similarly, we reject the notion that the failure to seek an instruction on second degree murder under the section of the statute upon which Andrews now relies demonstrates ineffectiveness. It does not matter that, with hindsight, Caine could have pursued a different strategy. What matters is that the strategy employed was effectively and competently pursued. We hold that it was. Indeed, Caine advised Andrews to testify on his own behalf, as Andrews' co-defendant Roberts did, and Andrews refused, thereby losing his best opportunity to explain his limited and reluctant participation. *See Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.") While Andrews' defense was unsuccessful before the jury, it was nonetheless a reasonable defense, competently and consistently followed.

Finally, we have reviewed Caine's appellate brief and, while it is the weakest part of his entire representation, it is not so poor that we are compelled to conclude that Caine provided constitutionally ineffective counsel. Thus, Andrews has failed to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065. This holding alone is enough to defeat the ineffectiveness claim.

 Turning to the second (prejudice) prong of *Strickland,* we hold, alternatively, that Andrews has failed to show prejudice from his attorney's allegedly inadequate performance. As we indicated in *Rivera,* "[p]rejudice is shown 'by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ' " *Rivera,* 900 F.2d at 1472 (quoting *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986)). It is apparent that

---

was administered to the victims. In fact, Caine did elicit at trial the fact that Orren Walker, except for the first cup of Drano, did not actually see Andrews pour the caustic substance again:

> Q [by Caine]: And it's your testimony, I believe, that Mr. Andrews poured the liquid in the cup. Did you observe him do this?
> A: Yes, sir; I did when he tried to give it to me.
> Q: I appreciate that. What about after Mrs. Naisbitt comes in?
> A: The drink was already in the cup, so he just gave it right quickly to Mrs. Naisbitt.
> Q: Okay. So from that point on, the only thing you were able to observe or hear both, was Mr. Pierre giving the drink and then hearing the sounds. Is that correct?
> A: Hearing the liquid poured in the cup and administering the drink to everyone.
> Q: You weren't really observing Mr. Andrews after that point, then?
> A: No, sir.

T–18 at 3182–83. Finally, Andrews asserts that Walker, at the preliminary hearing, testified that Andrews said, "I can't do it, I'm scared," twice, the first time being prior to the Drano being administered to the victims. He asserts that that fact was not brought out at trial. In fact, it was brought out by Caine on cross-examination:

> Q [by Caine]: You have indicated, I think, even from today and also in Mr. Newey's examination that at some point during this whole thing Mr. Andrews makes the statement "I can't do it, I'm scared."
> A: That's correct.
> Q: I wanted to see if we can pin down a little bit closer when that was actually said.
> I think in your testimony, and you correct me if I am wrong, your testimony to Mr. Newey the other day was that he said it just before he left the second time.
> A: I believe there was one other time. It was either just prior to administering the Drano to us or just after, I'm not sure.
> Q: If I were to tell you that previously in a preliminary hearing you testified it was prior to giving the liquid would that probably be right?
> A: I can't recall the exact time now, but it was just either just prior or just after. I don't remember.

*Id.* at 3183.

**49.** Even the dissent does not appear to suggest that Caine was ineffective in failing to cross-examine and discredit Platco. Its only quarrel is with the breadth of the cross-examination. That does not establish ineffectiveness.

Caine's chosen strategy was to argue that Andrews evidently had been disturbed and nervous throughout the evening, that he was at most a reluctant and minor participant in the gruesome events of that evening, and that he had effectively withdrawn by the time the actual shootings took place.[50] Had he argued alternatively that Andrews only committed second degree murder, he would have had to concede critical elements of his defense, which may in fact have had the effect of making him more culpable in the eyes of the jury.

Further, the evidence against Andrews was strong and compelling, including detailed eyewitness testimony. The jury evidently concluded as much, given the fact that the jury itself had a second opportunity to effectively mitigate the harshness of the verdict it imposed on Andrews, when it determined the appropriate penalty. Having determined Andrews' guilt beyond a reasonable doubt, the jury could have sentenced him to life imprisonment rather than death.[51] We cannot say that there is a reasonable probability that, but for Caine's performance, the outcome of the case would have been different. We therefore reject Andrews ineffectiveness claims on their merits.

## CIVIL RIGHTS CLAIM

We affirm the dismissal of this claim for substantially the reasons set forth in the district court opinion adopting the magistrate judge's report and recommendation. *See Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 1841–42, 36 L.Ed.2d 439 (1973); *Layton v. Willingham,* 726 F.2d 631, 635 (10th Cir.1984); *Henderson v. Sec-*

*retary of Corrections,* 518 F.2d 694, 695 (10th Cir.1975); *Gregory v. Wyse,* 512 F.2d 378, 381 (10th Cir.1975).

## CONCLUSION

We have carefully reviewed the many arguments presented in this case. We have held that: (1) Andrews' claim of entitlement to a ´second degree murder instruction and his claims of ineffective assistance of counsel are dismissed as an abuse of the writ; alternatively, the second degree murder claim is barred by *Teague's* nonretroactivity doctrine and the ineffectiveness claims are procedurally barred; alternatively, the ineffectiveness claims fail on their merits; (2) Andrews' claims relating to the napkin incident are dismissed because they are brought in a successive habeas petition; (3) Andrews' claims based upon the exclusion of the black juror are rejected on their merits; (4) Andrews' claims relating to the presentation of allegedly false testimony concerning recidivism of murderers during the penalty phase of his trial are dismissed as an abuse of the writ and, alternatively, fail on their merits; (5) the district court's review of the magistrate judge's reports and recommendations was adequate; and, (6) the district court properly dismissed Andrews' civil rights action. For the foregoing reasons, we grant the certificate of probable cause and AFFIRM the decision of the district court dismissing Andrews' petition for a writ of habeas corpus and dismissing his civil rights claim, and denying his motions for reconsideration and/or for a new trial.

**50.** Indeed, as Caine argued in his motion to dismiss the homicide charges, he believed the evidence "is quite clear that Mr. Andrews did not actually cause the death of any individual." T–18 at 3274. In his closing argument to the jury, Caine stated:

The only concern that there is any evidence of this man, why did you fire that gun, man. I am scared, I can't do it, and a physical withdrawal from the presence. As I said to you at the very beginning, the evidence may indicate that this individual is guilty of robbery. I am not going to attempt to whitewash that sort of evidence to you today, but there is no evidence beyond a reasonable doubt that con-

victs this individual of first degree murder, and in this case that is all there is. There is no allegation of manslaughter. There is no allegation of second degree murder. There is no allegation of negligent homicide. It is first degree murder or nothing else. T–22 at 4061.

**51.** We reject Andrews' claim that Caine's ineffectiveness extended to his performance in the penalty phase. In our view, the jury had sufficient opportunity to consider and weigh any mitigating evidence based upon Andrews' background and upbringing.

McKAY, Circuit Judge, dissenting in part, concurring in part:

William Andrews was convicted of three counts of murder in the first degree and two counts of aggravated robbery in one of the most highly publicized and racially inflammatory trials in the history of the State of Utah. The petitioner, who was nineteen years old at the time of the crimes, faced, and ultimately received, the death penalty. Yet the State of Utah appointed an attorney barely one year out of law school to represent him. The only eyewitness able to testify at trial indicated that Mr. Andrews was not present at the time of the shootings, the official cause of death of each of the three victims. Nor was he present when one of the co-defendants raped a seventeen-year-old victim, attempted to choke the eyewitness with a rope, and later stomped a pen into his ear. The eyewitness not only related that Mr. Andrews did not administer caustic fluid to any of the victims, though he did witness Mr. Andrews pour the first glass from a covered container, but that he twice heard Mr. Andrews protest to the co-defendant, "I can't do it, I'm scared." Tr. at 3183.

Seventeen years after petitioner's conviction, this court is presented for the first time with an opportunity to address whether the trial court's failure to instruct the jury on the lesser included offense of second degree murder was constitutional error. Petitioner also asks that we address the failings of counsel at trial and on direct review nearly two decades after his performance. The majority, justifiably concerned with the length of time between petitioner's conviction and this appeal, concludes that Mr. Andrews now faces too many barriers to obtain relief. Because I believe that petitioner clears those barriers asserted by the state, and that we have no authority to visit *sua sponte* those barriers not asserted by the state, I file this separate opinion dissenting in part and concurring in part. I address, in turn, petitioner's claims of ineffective assistance of counsel and the absence of a lesser included offense instruction of second degree murder. I also concur with the result, but not the reasoning, of the majority's analysis of pe-

titioner's claim under *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). I finally concur with the majority's thorough and well-reasoned analysis of the remainder of petitioner's claims.

## INEFFECTIVE ASSISTANCE OF COUNSEL

At trial and on direct appeal to the Utah Supreme Court, petitioner was represented solely by the junior member of the public defender's office who had graduated from law school less than one year prior to his assignment to the case. He apparently had no experience in capital cases or in any serious felony prosecution.

At trial, the jury heard the testimony of a co-worker of petitioner. He claimed that in a morning conversation some two months before the crime, petitioner stated: "One of these days I would like to rob a hi fi shop and if anybody gets in my way I will kill them." Tr. at 1549. Yet when the co-worker first contacted the police, petitioner argues here, the co-worker reported that he had overheard both petitioner and co-defendant Selby talking about robbing a hi-fi shop. He never reported that they contemplated killing anyone. Several charges were pending against the co-worker at the time of trial. In addition, his wife was a friend of one of the victims. Petitioner's counsel did not bring this to the attention of the jury.

At the sentencing phase, petitioner's counsel did not present any mitigating witnesses. And on appeal, counsel presented a seven-page brief containing only one incomplete and inaccurate case citation. While petitioner's counsel joined in some, but not all, of co-defendant's arguments, he made no argument special to petitioner's case.

Petitioner asserts that he was denied effective assistance of counsel both at trial and on appeal due to his appointed trial lawyer's inexperience and failure to effectively present a defense. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He seeks an

evidentiary hearing on this claim, which was denied in the state proceeding.

Petitioner lists the following errors by counsel at trial and on appeal:

(1) Counsel failed to interview petitioner's co-worker, a principal witness against his client, or to discover the inconsistent statement he had made when he was first contacted by the police.

(2) Counsel failed to cross-examine the eyewitness using his testimony at a preliminary hearing to demonstrate the several significant ways in which his trial testimony magnified petitioner's apparent role in the crime.

(3) Counsel did not prepare for the penalty phase by contacting witnesses to demonstrate the deprivations that Mr. Andrews suffered as a child. Nor did he request that his client undergo psychological examinations or investigate his client's background or schooling to discover that his client was a lifelong follower whose childhood IQ tests placed him in the range of mental retardation.

(4) On appeal, counsel filed a brief that totalled seven pages and contained a single and inaccurate citation of authority. The brief erroneously states that both petitioner and co-defendant "were administering the caustic fluid." It fails to note that petitioner twice refused his co-defendant's orders, saying "I can't do it, I'm scared." It does not address petitioner's limited participation in the binding of the eyewitness or another victim nor address the taping of the victims' mouths.

(5) Counsel joined in eight of the arguments presented by his co-defendant on appeal without even seeing the brief. Yet counsel inexplicably failed to join in the lesser included offense argument.

(6) Counsel mentioned no mitigating evidence on appeal. Nor did he make argument to the disproportionate sentence.

## 1. *State Procedural Bar*

Before reaching the merits of petitioner's claim of ineffective assistance of counsel, the majority concludes that the Utah Supreme Court's invocation of its successive habeas petition provision, Utah Rule 65B(i)(4), precludes this court from entertaining petitioner's claim. Federal habeas review of a defaulted federal claim is precluded only when the state court has disposed of the claim on a procedural ground "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989). Under Rule 65B(i)(4), all claims relating to a denial of the complainant's constitutional rights must be raised in the initial post-conviction proceeding "and may not be raised in another subsequent proceeding except for good cause shown." Utah R.Civ.P. 65B(i)(4). As the majority notes, the Utah Supreme Court invoked this procedural bar to preclude review of petitioner's ineffective assistance of counsel claim. This court may hear petitioner's claim of ineffective assistance of counsel, therefore, only upon a showing of "cause" for the procedural default and "prejudice" attributable thereto. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977).

Because petitioner's trial counsel represented him both on direct appeal and in the first state post-conviction proceeding, I believe that petitioner has demonstrated sufficient cause for his procedural default in the state proceeding. In *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), the Supreme Court surmised that "[b]ecause collateral review will frequently be the only means through which an accused can effectuate the right to counsel, restricting the litigation of some Sixth Amendment claims to trial and direct review would seriously interfere with an accused's right to effective representation." *Id.* at 378, 106 S.Ct. at 2584. This court therefore has in the past circumvented a state procedural rule and held that where "the allegedly ineffective counsel handled both the trial level proceedings and the direct appeal, a petitioner may raise an ineffective assistance of counsel claim for the first time collaterally." *Osborn v. Shillinger*, 861 F.2d 612, 623 (10th Cir. 1988). *See also Hopkinson v. Shillinger*, 866 F.2d 1185, 1203 n. 12 (10th Cir.1989)

(adhered to by split decision on rehearing en banc in *Hopkinson v. Shillinger*, 888 F.2d 1286 (10th Cir.1989). We reasoned that because it is unfair to "expect counsel in that situation to attempt to prove their own incompetency, there is good cause for the issue not having been raised until after the direct appeal." *Hopkinson*, 866 F.2d at 1203–04 n. 12 (citing *Alston v. Garrison*, 720 F.2d 812, 816 (4th Cir.1983), *cert. denied*, 468 U.S. 1219, 104 S.Ct. 3589, 82 L.Ed.2d 886 (1984)).

I believe the same rationale applies to counsel representing the defendant on collateral review. As did the Eleventh Circuit when evaluating similar facts in *Stephens v. Kemp*, 846 F.2d 642, 651 (11th Cir.), *cert. denied*, 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158 (1988), I "find 'cause' for petitioner's failure to raise the ineffective assistance issue in his first state habeas petition in the fact that petitioner's trial counsel, whose effectiveness is here challenged, also represented him in the first state habeas proceeding." [1]

In so finding, I cannot concur with the majority's assessment that, even if the state's default rule does not apply to petitioner's first state collateral proceeding, the claim should have been raised in what it fashions as his second state collateral proceeding.[2] The federal district court stayed the proceeding in petitioner's first habeas petition only to permit him to seek collateral relief in the Utah Supreme Court on the retroactive application to his case of that court's decision in *State v. Wood*, 648 P.2d 71 (Utah 1981), *cert. denied*, 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982). *See Andrews v. Morris*, 677 P.2d 81 (Utah 1983). The proceeding in the state court, limited to this sole issue, cannot fairly be characterized as a second state post-conviction petition. *Cf. Fernandez v. Cook*, 783 P.2d 547, 550 n. 3 (Utah 1989) (failure to ask Utah Supreme Court to act in its "discretion" to hear argument not otherwise properly before it insufficient to foreclose argument in subsequent proceeding). Petitioner was not authorized to raise any issue before the state court other than the one remanded by the federal district court.[3] Any insinuation by the majority to the contrary is gravely in error.

Even if I were to conclude that representation of petitioner by the same counsel on

---

1. I do not read the Supreme Court's recent decision in *Coleman v. Thompson*, — U.S. —, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), to the contrary. There, the petitioner's counsel failed to file a timely notice of appeal from the state trial court's determination on collateral review that the petitioner was not deprived of effective assistance of counsel. The Court held that because a prisoner has no right to counsel in a state post-conviction proceeding, ineffective assistance of counsel in that proceeding cannot be "cause" to excuse a state procedural bar. The Court in *Coleman* made clear that one state court already had addressed the prisoner's ineffective assistance claim. Here, petitioner required a forum beyond direct review to present evidence outside the record demonstrating counsel's ineffectiveness. It is unfair to penalize petitioner for counsel's failure to introduce evidence demonstrating his own ineffectiveness. Petitioner's claim therefore has never been heard by a state court on its merits. Nor are we presented with an attorney error in a collateral proceeding that results in a procedural default. The "cause" basis for petitioner's failure to raise the claim earlier is not premised on a Sixth Amendment deprivation of effective counsel, but instead is based on broader principles of due process.

2. Nor does the fact that additional counsel entered an appearance in petitioner's case on the eve of petitioner's first collateral proceeding change my view. I do not make this conclusion based on additional counsel's ignorance or inadvertence, as suggested by the majority, *see* majority op. at 1193, but instead conclude that the circumstances of counsel's entry effectively precluded him from raising the claim. Additionally, I cannot agree with the majority's characterization of the district court's remand order as a second state collateral proceeding. *See infra* at n. 3. I therefore believe that the state collateral proceeding from which this habeas petition stems was petitioner's first opportunity to effectively raise the ineffective assistance of counsel issue.

3. The district court's order states:

 IT IS HEREBY ORDERED:
 1. That these proceedings are temporarily stayed, and the hearing presently set to commence October 26, 1981 is vacated, pending a decision in the state courts as to whether or not *State v. Wood, supra,* will result in reversal of petitioner's sentences of death; and
 2. Petitioners herein are directed, within a reasonable time, to make appropriate application in the State Supreme Court for relief based upon *State v. Wood, supra.*
 Petitioner's App. at 27.

collateral review as at trial and on direct review did not establish "cause" to bypass the state procedural default rule, however, I believe that the Utah Supreme Court's inconsistent application of its procedural bar rule to ineffective assistance of counsel claims allows a petitioner to assert the merits of his claim in federal court. As the majority readily recognizes, a state's application of a procedural bar is inadequate unless it is " 'strictly or regularly followed.' " *Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988) (citation omitted) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 262-63, 102 S.Ct. 2421, 2426-27, 72 L.Ed.2d 824 (1982)). Only a "firmly established and regularly followed state practice" may be interposed by a state court to preclude federal review of a constitutional claim. *James v. Kentucky*, 466 U.S. 341, 348, 104 S.Ct. 1830, 1835, 80 L.Ed.2d 346 (1984). In *Dunn v. Cook*, 791 P.2d 873 (Utah 1990), and *Fernandez v. Cook*, 783 P.2d 547 (Utah 1989), the Utah Supreme Court excused a defendant's failure to raise a claim of ineffective assistance of counsel because the defendant was represented by the same allegedly ineffective attorney at the subsequent proceeding in which he would otherwise be required to raise the claim. The crux of each decision was not the stage of the proceeding at which new counsel for the first time appeared, the position to which the majority points to distinguish the relevant precedent, but that at all prior hearings the defendant was represented by the same counsel that is now alleged to have been ineffective. *Dunn*, 791 P.2d at 878; *Fernandez*, 783 P.2d at 551. Indeed, the firmly established and regularly followed state practice appears to be that a defendant is excused from raising an ineffective assistance of counsel claim until a subsequent proceeding in which the defendant has retained new counsel. Significantly, the majority cites no recent case to the contrary. I therefore conclude that the majority's reliance on the state's invocation of its procedural bar rule to preclude petitioner from raising an effective assistance of counsel claim is in error.

2. *Abuse of the Writ*

Perhaps the greatest irony in the majority's opinion rests in its conclusion that petitioner has abused the writ. In its repeated application of procedural defaults to petitioner's claims, the majority completely ignores the state's failure to assert with particularity abuse of the writ to petitioner's claim of ineffective assistance of counsel on appeal. After the parties briefed their positions before this court and oral argument was heard, the Supreme Court issued a new standard by which we are to review a successive petition for a writ of habeas corpus. *McCleskey v. Zant*, —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). In *McCleskey*, the Court for the first time set out that a petitioner must meet the cause and prejudice standard of *Wainwright v. Sykes*, 433 U.S. at 72, 97 S.Ct. at 2497-99, applicable to procedural default cases, before a petitioner's failure to raise the claim in the earlier petition is excused. This "strict liability" standard was set forth to avoid procedural abuses and to ensure the finality of state convictions.

Nevertheless, "[w]hen a prisoner files a second or subsequent application, the government bears the burden of pleading abuse of the writ. The government satisfies this burden if, *with clarity and particularity*, it notes the petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ. The burden to disprove abuse then becomes petitioner's." *McCleskey*, 111 S.Ct. at 1470 (emphasis supplied). The magistrate judge's recommendation finds that petitioner's claim of ineffective assistance of counsel was not abusive. The district court adopted wholesale the magistrate judge's recommendation. I search in vain to find even a hint of writ abuse with regard to this claim in the state's brief before this court. The state did not file an objection to the magistrate judge's recommendation, nor has it appealed the district court's adoption of that conclusion. The claim therefore has been waived and is not properly before us. The majority's decision to assert this issue on behalf of the state, in my estimation, is

completely unwarranted. "An issue not included in either the docketing statement or the statement of issues in the party's initial brief is waived on appeal. *Bledsoe v. Garcia,* 742 F.2d 1237, 1244 (10th Cir.1984). Proper appellate advocacy requires early identification of the issues. *Braley v. Campbell,* 832 F.2d 1504, 1508 & n. 2 (10th Cir.1987). Merely mentioning inherent defects in another context is not enough." *Adams–Arapahoe Joint School Dist. No. 28–J v. Continental Ins. Co.,* 891 F.2d 772, 776 (10th Cir.1989).[4]

Because I find no reason to reach the merits of petitioner's claim of ineffective assistance of counsel without the district court first examining the substance of the claim,[5] I would remand the cause to the district court for a hearing regarding this claim. *See Bath v. National Ass'n of Intercollegiate Athletics,* 843 F.2d 1315, 1317 (10th Cir.1988). I must therefore respectfully dissent from the majority's assessment of this issue.[6]

## LESSER INCLUDED OFFENSE INSTRUCTION

Petitioner also complains that the trial court's failure to instruct the jury on second degree murder resulted in an unconstitutional conviction. He contends that the jury was forced to choose between convicting him of first degree murder and acquittal in violation of the Supreme Court's decision in *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), a decision announced after petitioner's conviction became final.

### 1. *Abuse of the Writ*

Once again, the majority attempts to assert abuse of the writ on the state's behalf. The only attempt by the state to appeal the issue is in a statement of additional authority submitted to this court after the *McCleskey* decision was issued. It did not file an objection to the magistrate's conclusion that there was not writ abuse regarding this claim. Nor did it appeal the district court's adoption of that conclusion. Because the state clearly waived any argument relating to an abusive writ connected with this claim, I cannot concur in the majority's unwarranted invocation of writ abuse here.

Moreover, I find the majority's analysis regarding this claim erroneous. It is clear that "a retroactive change in the law and newly discovered evidence represent excuses for failing to raise the claim earlier." *McCleskey,* 111 S.Ct. at 1467 (quoting Advisory Committee Notes to Rule 9, 28 U.S.C. § 2254, pp. 426–27). Petitioner therefore argues that the change in the law on lesser included offenses in capital cases, set forth in *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), presents sufficient cause for his failure to present the claim in his previous habeas petition.

At the time the Supreme Court issued its decision in *Beck,* the petitioner already had submitted his first federal habeas proceed-

---

**4.** The quote of the majority from appellee's brief, *see* majority op. at 1182–83 n. 29, appears in the state's recitation of facts and procedural history and does not attempt to address abuse of the writ. The issue is not included in either the docketing statement or the statement of issues. The "general" section addressing abuse of the writ in the state's brief to which the majority refers only sets out the law regarding that principle. The state then attacks two of petitioner's claims as an abuse of the writ—neither of which are the claims involved here. Yet the majority, in its resurrection of a claim clearly abandoned by the state, poses petitioner's arguments before the magistrate judge as if they were properly before this court. In fact, petitioner makes no argument regarding this claim because he correctly assumes that the state has not raised the issue on appeal. This court should apply princi-

ples of procedural default evenly to both parties. The strict standard applied to defendant's inexperienced counsel certainly should apply with equal force to the experienced counsel for the state.

**5.** Despite the majority's supposition to the contrary, *see* majority op. at 1195 n. 49, I do not reach the issue of counsel's effectiveness in failing to cross-examine and discredit petitioner's co-worker. I instead believe that the district court, after conducting an evidentiary hearing, is the proper venue to make such an initial determination.

**6.** Though I do not reach the issue, I note my discord with the majority's use of the jury's decision at the sentencing phase to justify its decision at the guilt stage. Majority op. at 1196.

ing to the federal courts. That petition, of course, did not include a claim of constitutional error relating to the failure of the trial court to instruct the jury on a lesser included offense. As the majority reasons, such a failure was not recognized by the courts to be of constitutional dimension until the decision in *Beck* was issued. Petitioner asserts that the new rule announced in *Beck*, combined with the failure of the Utah courts to make clear that such an instruction was available to him under Utah law until it issued its decision in *State v. Hansen*, 734 P.2d 421 (Utah 1986), presents cause for his failure to raise this claim in his first petition.

The majority nevertheless rejects petitioner's contention of the claim's novelty until 1986, the year that the Utah Supreme Court issued the *Hansen* decision. It notes that Utah law did not preclude such an argument until 1983, when the Utah Supreme Court issued its decision in *State v. Norton*, 675 P.2d 577 (Utah 1983), *cert. denied*, 466 U.S. 942, 104 S.Ct. 1923, 80 L.Ed.2d 470 (1984), which was later overruled by *Hansen*.[7] Because the petitioner had a period of time to raise his contention from 1980, when the *Beck* decision was issued, until 1983, when the decision in *Norton* clearly foreclosed such a claim, the majority reasons that the writ before us is abusive. Majority op. at 1184. It sets forth a rule, without citation, that requires a petitioner to amend a petition already filed in federal court to include a new rule of constitutional law announced after the petition was filed.

I believe that the majority's definition of an abuse of the writ goes too far. "The requirement of cause in the abuse of the writ context is based on the principle that petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition." *McCleskey*, 111 S.Ct. at 1472. When discussing the 1966 amendment to 18 U.S.C. § 2244 (1988), the legislature concluded that district courts should be spared the obligation to address habeas petitions " 'containing allegations ... predicated upon grounds *obviously well known to [the petitioner] when [he] filed the preceding application.*' S.Rep. No. 1797, 89th Cong., 2d Sess., 2 (1966) (emphasis added)." *McCleskey*, 111 S.Ct. at 1480 (Marshall, Blackmun & Stevens, JJ., dissenting). The majority would now require a petitioner, who in good faith included all claims then available at the time the petition was filed, to withdraw the petition until the new claim is exhausted in state court. *See Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Castille v. Peoples*, 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); 28 U.S.C. § 2254(b) (1988). Not only do I believe that the rule announced by the majority today is contrary to the intent of Congress, I believe that the harsh result it imposes on a habeas petitioner is unwarranted. The failure to put in abeyance a petition filed in good faith, and which adheres to the "strict liability" test recently announced by the Court in *McCleskey*, can in no way be characterized as abusing the writ procedure. Principles of comity do not require that claims before federal courts, which already have gone through what at times is a tedious and lengthy exhaustion of state procedural remedies, should be put on hold to await the determination of a claim wholly separate from the claims before the federal court and which could not have been presented to the state court earlier. A rule to the contrary would significantly curtail the rights of a petition-

---

**7.** It should be noted that although co-defendant Selby raised this issue on direct appeal, petitioner's inexperienced counsel did not join in that claim. As to Selby, the state court found no rational basis to support instructions on lesser included offenses. *State v. Pierre*, 572 P.2d 1338, 1353–54 (Utah 1977), *cert. denied*, 439 U.S. 882, 99 S.Ct. 219, 58 L.Ed.2d 194 (1978). It did not specifically address the lesser included offense instruction as it related to petitioner.

Though the majority correctly recites that petitioner's counsel did not request an instruction on second degree murder at trial, counsel did join in co-defendant Selby's counsel's exception to the trial court's refusal to submit to the jury the second degree murder instructions tendered by Mr. Selby.

er to a fair and expeditious review before the federal courts.[8]

### 2. *Retroactivity of Beck*

I concur in the majority's assessment of the retroactivity of *Beck.* I therefore concur in the dismissal of the claim.[9]

### *SWAIN* CLAIM

I must also take exception to the majority's invocation of the principle of finality to limit the exception to the systematic exclusion standard of *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), announced in *Weathersby v. Morris,* 708 F.2d 1493 (9th Cir.1983), *cert. denied,* 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984), to instances where the prosecutor volunteers his racially motivated reasons at trial. Majority op. at 1180–1181 n. 25. The Court in *Swain* merely held that the simple fact that black jurors were struck by the

prosecution in a given case did not warrant an inference of impropriety or an evidentiary inquiry. A prosecutor's admission, even in an unrelated proceeding several years later, in my opinion, sufficiently makes out a prima facie case of discrimination. That the prosecutor's motive is revealed years later provides little comfort to a defendant laboring under an unconstitutional conviction.

I further take exception to the majority's approval of the magistrate's rationale that the venireperson was properly excluded because he would feel "pressure" from the black community. An assumption that a black juror would be under pressure from the black community because the defendant is black, with no supportable facts specific to the venireperson, evidences discrimination. *See United States v. Wilson,* 884 F.2d 1121, 1124 (8th Cir.1989) (en banc).

I nevertheless conclude that the petitioner's challenge of the venireperson at issue

---

**8.** Though not addressed by the majority, the Utah Supreme Court ruled that petitioner did not demonstrate "good cause" why the argument was not raised on direct appeal or in prior post-conviction proceedings. *Andrews v. Shulsen,* 773 P.2d 832, 833 (Utah 1988). I do not believe that the Utah Supreme Court's invocation of Utah R.Civ.P. 65B(i) presents an adequate and independent state ground barring petitioner from presenting the lesser included offense claim in federal court. As the majority points out, a procedural bar rule sufficient to preclude federal review of a claim must be independent of the merits of the federal claim. *Harris,* 489 U.S. at 260, 109 S.Ct. at 1042. Under Utah law, application of Utah R.Civ.P. 65B(i)(4) is excepted upon a showing of "good cause." The Utah Supreme Court has defined "good cause" to include "the denial of a constitutional right pursuant to new law that is, or might be, retroactive." *Hurst v. Cook,* 777 P.2d 1029, 1037 (Utah 1989). Because, under the facts of this case, the Utah courts must first analyze the retroactivity of *Beck* before determining no "good cause" has been demonstrated, Utah's procedural bar rule is not independent of the merits of the federal claim petitioner presents here. *Cf. Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (state procedural default was not independent of federal law so as to bar direct review when state made application of rule depend on antecedent ruling on federal law).

In addition, I note that the Utah Supreme Court includes in its review of capital cases on direct review any manifest and prejudicial er-

ror, even absent an objection at trial or a challenge on appeal by the party. *State v. Wood,* 648 P.2d 71, 77 (Utah), *cert. denied,* 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982). The court engaged in this analysis on petitioner's direct review. *State v. Andrews,* 574 P.2d 709, 710 (Utah 1977). It did not, however, address the failure of the trial court to instruct the jury on the lesser included offense. I find merit in petitioner's argument here that state-federal comity issues are no longer present where a state rule can bar federal review of a constitutional issue when it does not bar the state court's review of the issue. Merely because the Utah Supreme Court missed the issue, petitioner should not bear the consequences of that error. Otherwise, state defendants are vulnerable to the same arbitrary action that has been condemned by the Supreme Court when reviewing inconsistent application of state procedural bar rules. *See Hathorn v. Lovorn,* 457 U.S. 255, 263, 102 S.Ct. 2421, 2427, 72 L.Ed.2d 824 (1982).

**9.** For clarification, *see* majority op. at 1187 n. 38, I disagree with the majority's analysis of writ abuse and the lesser included offense issue because I believe it in error. Because I believe that petitioner could not have been expected to assert entitlement to a lesser included offense instruction under *federal* law at the time he filed his first federal habeas petition, I do not concur in the majority's judgment of writ abuse even if the state had raised the issue before this court. Because I conclude, as did the majority, that *Beck* is not retroactive under the doctrine of *Teague v. Lane,* however, I reach the same ultimate conclusion and hence concur with its judgment on this issue.

for cause precludes petitioner's standing to contest his exclusion from the jury.

### CONCLUSION

I fear that our deference to the state's interest in the finality of its judgment may compel us to insert procedural barriers that are otherwise not mandated when reviewing state convictions imposed many years ago. The case before us presents such a situation. The recent barrage of precedent seeking to limit abuses of the habeas process should not blind us to the significant mandate conferred on us by Congress: to ensure that an individual is not in custody in violation of his or her rights guaranteed under the Constitution or federal law. For the reasons stated, I would remand for hearing on the merits petitioner's claim of ineffective assistance of counsel.